# ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2011 JUL 26 PH 6: 07

Jury trial demanded

JILLIAN JOHN

552 PARKSIDE AVE, APT B4     COMPLAINT

BROOKLYN NEW YORK, 11226

NAME OF PLAINTIFF(S)

**MATSUMOTO, J.**

v.

KingsBrook Jewish Medical center / Rutland Nursing Home

585 Schenectady Ave

BROOKLYN N.Y 11203

NAME OF DEFENDANT(S)

**MANN. M.J.**

# CV11 - 3624

This action is brought for discrimination in employment pursuant to (check only those that apply):

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
**NOTE:** *In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592 , the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117 (amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

RECEIVED
JUL 26 2011
PRO SE OFFICE

-1-

Jurisdiction is specifically conferred upon this United States District Court by the

aformentioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate

under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991,

Pub. L. No. 102-166, and any related claims under New York law.

1.     Plaintiff resides at:

552 Parkside ave Apt B4
Street Address

Kings , NY , 11226 , 718-496-1614
County     State     Zip Code     Telephone Number

2.     Defendant(s) resides at, or its business is located at:

585 Scheneetady Ave
Street Address

Kings , Brooklyw , Ny , 11203
County     City     State     Zip Code

3.     The address at which I sought employment or was employed by the defendant(s) is:

585 Schenectady AvE
Street Address

Kings , Brooklyw , N.Y , 11203
County     City     State     Zip Code

4.     The discriminatory conduct of which I complain in this action includes

(check only those that apply).

☐ Failure to hire.

☒ Termination of my employment.

☐ Failure to promote.

☐ Failure to accommodate my disability.

☐ Unequal terms and conditions of my employment.

☒ Retaliation

☐ Other acts (specify): _____.

*NOTE: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

5.   It is my best recollection that the alleged discriminatory acts occurred on:

Date(s) 11/2007 → 12/2007 → 02/2008 → 03/2008 → 04/2008 – 09/2008 → 07/2009 – 09/2009.

6.   I believe that the defendant(s) (check one)

☑ is still committing these acts against me.

☐ is *not* still committing these acts against me.

7.   Defendant(s) discriminated against me based on my:
     (check only those that apply and state the basis for discrimination, for example, what is your religion, if religious discrimination is alleged)

☑ race African American ☑   color Black

☐ gender/sex _____ ☐  religion _____

☑ national origin GRENADA _____

☐ age _____  My date of birth is: _____
                                          Date

☐ disability _____

*NOTE: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

8.    The facts of my case are as follows:

Since November 2007 to September 11th 2009 I
was treated unfairly and discriminated against and
suffered retaliation based on my race, color, National
Original because I spoke out against the unfair
practices against protected class of individuals of
which I am part. Please see attached the Charges
filed with the E.E.O.C.

(Attach additional sheets as necessary)

**Note:**   As additional support for your claim, you may attach to this complaint a copy of
the charge filed with the Equal Employment Opportunity Commission, the New
York State Division of Human Rights, or the New York City Commission on
Human Rights.

9.    It is my best recollection that I filed a charge with the New York State Division of
Human
Rights or the New York City Commission on Human Rights regarding defendant's

alleged discriminatory conduct on: _____.
                                                              Date

10.   It is my best recollection that I filed a charge with the Equal Employment Opportunity

Commission regarding defendant's alleged discriminatory conduct on: **11-9-2009**
                                                                                              Date

**Only litigants alleging age discrimination must answer Question #11.**

-4-

11.     Since filing my charge of age discrimination with the Equal Employment Opportunity

Commission regarding defendant's alleged discriminatory conduct (check one),

☐       60 days or more have elapsed.

☐       less than 60 days have elapsed.

12.     The Equal Employment Opportunity Commission (check one):

☐       has not issued a Right to Sue letter.

☑       has issued a Right to Sue letter, which I
        received on   4 - 29 - 2011   .
                              Date

**NOTE:**     Attach a copy of the Right to Sue Letter from the Equal Employment Opportunity
              Commission to this complaint.

        WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,
including injunctive orders, damages, costs, and attorney's fees.

_Lillian Sohn_
PLAINTIFF'S SIGNATURE

Dated:  7-25-2011

552 Parkside Ave, Apt B4
Address
Brooklyn, NY 11226
718-496-1614
Phone Number

-5-

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | 520-2009-04093 |
| ☒ EEOC | |

**New York State Division of Human Rights** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Jillian John | 347-627-9569 | 03-13-72 |

| Street Address | City, State and ZIP Code |
|---|---|
| 552 Parkside Avenue, Apt. B-4, Brooklyn, NY 11226 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Kingsbrook   Jewish Medical Center / Rutland Nursing Home | 500+ | 718-604-5000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 585 Schenectady Avenue, Brooklyn, NY 11226 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 11-02-07 | 08-17-09 |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

////////////////////////////////////////////////////

# SEE ATTACHED PAGE(S)

RECEIVED
AUG 19 2009
EEOC-NYDO-CRTIU

////////////////////////////////////////////////////

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to

SIGNATURE OF COMPLAINANT

| Date | Charging Party Signature |
|---|---|
| 8/19/09 | X *[signature]* |

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE August (month, day, year) 19, 2009

CLAUDEL AIME
Notary Public, State of New York
No. 01AA90871
Qualified in Kings County
Commission Expires 01/   10

I, Jillian John, black female began working at Kingsbrook Jewish Medical Center/ Rutland Nursing home as Certified Nursing Attendant on March 26, 1996. In November of 2002, I was upgraded to the Staffing Clerk position on the 3-11 tour. In May 2008, after much opposition by Ms. Mary Anne Rose (white), the Administrator of Rutland Nursing Home/VP of Long Term Care, I was promoted to the Staffing Manager's position on the day shift. I have always performed my duties with the utmost care, attention and enthusiasm, and I have always followed my Supervisor's instructions and the Kingsbrook Jewish Medical Center /Rutland Nursing Home policies, rules and regulations.

My problems begun on Friday, November 2, 2007 when a KRONOS training (a computerized program to process payroll) was being organized for the employees whose job description involves payroll process. Mr. Earnest Liggins from the Human Resources Department who was responsible for organizing the educational session informed me that I needed to attend the training which started at three pm that day. When I arrived at the training, all the employees with the exception of me were being given full access to the KRONOS program. When I realized that I was just sitting at the computer and was unable to do anything on the screen, I question why I was not able to do anything on my computer. At this point, Jacquin Edwards, the person doing the training, asked Ms. Christine Kay what she wanted me to have access to and she replied " I will only grant her access to view" I sat in the training for another 10-15 minutes unable to do anything but to look on as my other colleagues went through the training. I felt very embarrassed, humiliated and hurt, since we all had the same job description and they were being given access to the entire program and I was not, even the part time worker was given full access. At this point I asked to be excused since it did not make any sense for me to continue sitting there doing nothing.

On Monday, November 5th I wrote to Mr. Liggins informing him via e-mail of the problem that I encountered in the training (see attached -- exhibit 1), he never responded to my e-mail. Two days later I went to see Mr. John McKeon with my union delegate since I was in the union at that time. I explained to him everything that occurred and he told me not to worry about it, because they are in the process of upgrading the KRONOS system to 6.0 and that I will be trained at that time. KRONOS has now been upgraded earlier this year and I still have not gotten the training, even with my title as Staffing Manager. I have to constantly ask Ms. Kay for information from the system in order to complete my duties which retard my progress and hinder me from completing my duties efficiently and effectively

Resources regarding Ms. Christine Kay's behavior and arrogant attitude, Ms. Mary Anne Rose, who is very close to Ms. Kay, attitude towards me changed immediately. It was Ms. Rose's custom from 2003, to give me monetary gift at Christmas time for the children. That Christmas of 2007, she stopped giving me

the monetary gift and gave me a pack of stationary instead (see attached Exhibit 2).  She also told the DNS that she will never approve for me to have the staffing manager's position when it becomes vacant.  True to her words, when the position became vacant in April of 2008, the qualification required on the posting was a Bachelor degree.  The person who held that position before did not have a high associate nor a bachelor degree, and the job description never changed.  It was only due to the persistence of my supervisor Ms Gemma Moore that I was promoted to the position.  (Job posting **2008-1061 dated March 10, 2008** was not available for attachment because it was cut out from all the postings that were requested and received from the employment office (See attached Exhibit - 3).

As the staffing clerk, I was doing the same duties as the staffing manager, yet when I was promoted to the staffing manager's position, I was placed on six months probation after doing the same job for the past five years in order to get an increase in salary.  I was reliably informed by Ms. Christine Kay that when she was promoted to the Director of Long Term Care Resources, which was a different job description from her previous title of Administrative Coordinator, she did not have to go through a probationary period and she was given all her benefits and increase in salary immediately (See Exhibit - 4).

Please be informed that I was the only one working the staffing desk from October 9, 2007 to February 11, 2008 while my predecessor was on a Leave of Absence.   I was working six days a week including double shifts, in order to keep up with the work load and also to ensure that the payroll for over three hundred employees was always on time.  On Friday, September 19, 2008, Ms. Christine Kay, called me on the telephone and informed me that I would not be paid for the extra hours I worked for the pay period ending Saturday September 20, 2008 and that I would have to take time back as compensation.  Please note that I was told by Ms. Kay that this time back had to be taken within the same pay period which was ending Saturday September 20, 2008 (See attached – Exhibit - 5).  I requested to work through Kingsbrook agency for the extra hours I was putting in, but was told by Ms. Mary Anne Rose that I could not.  I went to Mr. John McKeon, who told me that he had no problem with me registering with the agency but Mary Anne Rose thinks because of my involvement with payroll I could be subjected to stealing of time however, he will speak to her (Ms Rose) and get back to me which he never did. Every other manager employed at Kingsbrook Jewish Medical Center/Rutland Nursing Home works through the agency, including Ms. Elise Conway (white) who is the recruiter for the medical center and Director of the agency.   I was feeling very stressed and unappreciated, and having to cope with all the e-mails about the payroll/staffing breakdown.  I had to see medical attention on September 30 and October 2, 2008 (See attached – Exhibit 6 & 7).

Page 2 of 4

On Friday, July 31, 2009, I was informed by Ms. Gemma Moore, Director of Nursing (DNS) that Mr. John McKeon told her that he understands that I am running a "susu " (The pooling of money from different individuals which is then paid out on a weekly or bi-weekly basis to the individuals involved until each person receives their draw.  This is a cultural way of saving by the African American and it allows us to buy houses and send our children to school), and that he cannot allow me to continue working in the institution.  He stated that he would prefer not to terminate me, but that he would accept my letter of resignation.  I could not understand why I was in danger of losing my job over a practice that has been rampant in Kingsbrook Jewish Medical Center/Rutland Nursing Home for decades.  I knew right then and there that I was being terminated for more than just running the Susu.  Being a single mother with two children and that being my only source of income, I was very distraught and had to be taken via ambulance to the Kings County Hospital Psychiatric Emergency Room for treatment; I was released the same day.

On Monday morning, August 3, 2009, when I reported for duty, I saw the part time Staffing Associate who works the evening shift, also reported for duty.  I asked him why he was on duty and he told me that Ms. Christine Kay called him on Friday and told him to report to work for the rest of the week on the day shift.  When I realized that Ms. Kay had already terminated and replaced me, I sent a letter of concern via e-mail to Mr. McKeon, copied to Dr. Linda Brady, CEO/President, Mr. Kevin Molloy, COO (Chief Operating Officer), Mary Anne Rose, Administrator/VP of LTC, Gemma Moore, DNS and Kathleen John, ADNS (Assoc. Director of Nursing), Stacey Mohammed-Oliver, Human Resources Relations Officer (See attached – Exhibit - 8).  When Ms. Mary Anne reported for duty, she called me into her office and was very upset with me for sending the e-mail out.  She started screaming at me telling me that she was the VP and can make whatever decision she wants, and she told Ms. Kay to replace me.  The manner in which she was handling me was very demeaning and humiliating that I broke down and started to cry.  I was much traumatized and had to go to Employees Health for evaluation.  Based on my elevated blood pressure, I was advised to seek further medical attention.  I went to my private doctor who gave me the rest of the week off.  I returned this note to the job around 11:00 AM (See attached – Exhibit - 9).  On Tuesday morning, August 4, 2008, I received a FedEx letter from Mr. John McKeon who was on vacation at the time, informing me that I was suspended effective August 3, 2009 (See attached – Exhibit - 10).

On Wednesday August 12, 2009, I received a call from the Human Resources Department telling me that I needed to come in to speak to Mr. John McKeon at 2:30 PM.  Present at the meeting was Mr. McKeon, Stacey Mohammed-Oliver, Ms. Gemma Moore and Ms. Mr. McKeon stated that he understood that I was running a Susu and that he cannot tolerate that kind of behavior from me because I was the Staffing Manager.  He further went on to say that he is not saying that I did anything wrong, but because of my position he cannot allow this; if I was a manager in the Radiology Department it would have been different.  I

informed him that there were many Susu with a larger payout than mine going on right now in the Medical Center/Rutland Nursing Home.  On request from Mr. McKeon, I gave him a written statement with the name of an employee with a Susu whose payout is fourteen thousand dollars ($14,000) bi-weekly.   Mr. McKeon stated that he would not make a decision that evening, but that I would continue my suspension without pay, and he stated that he would get back to me in writing the next day, Thursday August 13, 2009.

At present I am being treated as a patient at the Kings County Hospital Psychiatric Outpatient Clinic as a direct result of the treatment I received at the hands of my employer (See attached – Exhibit 11).

I know that I have been treated unfairly and I have been subjected to discrimination and retaliation and subjected to work in a hostile environment on the basis of my race and national origin.  Kingsbrook Jewish Medical Center was aware of the situation and failed to take any corrective action.  Instead, I was targeted for termination in retaliation for complaining about the unfair treatment and harassment by Ms. Mary Anne Rose, Christine Kay and Mr. John McKeon, all in violation of the Title VII of the Civil Rights Act of 1964, as amended.

Page 4 of 4

Dear Mr. Liggins,

*[Handwritten notes at top:]* Attention to ~~misform~~ / Attention to ~~screen~~
Facie said that is ~~correctly~~ / What they want you to Have:

Access To view / As Per Christine Kaj / Employee ~~How~~ PASS ~~works~~:

Employee ask for Excuse To Leave.

**John, Jillian**

| | |
|---|---|
| **From:** | John, Jillian |
| **Sent:** | Monday, November 05, 2007 5:39 PM |
| **To:** | Liggins, Earnest |
| **Cc:** | Perez, Lytton |
| **Subject:** | kronos |

Dear Mr. Liggins,
I just need to get a few things clarified.
   On Friday November 2, 2007, I was requested by you to attend a kronos training session. During the training I observe that everyone else was able to do active work on their computer, while I had the ability to view. This continued for about half an hour into the session. I felt as though I was in the wrong place and a few questions arose in my mind.
1.    If my job title is the same as the other employees that were in the training, why then was I selected for exclusion from the entire training?
2.    Why would a part time employee be granted the full training session and I as a full time employee be granted view access only?
3.    I would like to know what my role would be with this new access requirement.

This act of segregation made me feel very humiliated degraded and even discriminated against, because,
even if I was only allowed to have "view access" only, then I should have been sent to a different training
session. I would greatly appreciate if you can look into this matter for me please.

Thank you.
Respectfully.
Jillian John.

EXT 6522
jjohn@kingsbrook.org
"Change your thoughts and you change the world"

*[Handwritten vertical note on right side:]* Received on 11/6/07

EXHIBIT— 1



**U.S. Equal Employment Opportunity Commission**
**New York District Office**

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TDD: 1-800-669-6820
FAX (212) 336-3625
1-800-669-4000

Respondent: KINGSBROOK JEWISH MEDICAL CTR
EEOC Charge No.: 520-2009-04093
FEPA Charge No.:

September 24, 2009

Jillian M. John
552 Parkside Avenue
Apt B4
Brooklyn, NY 11226

Dear Ms. John:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ X ]   Title VII of the Civil Rights Act of 1964 (Title VII)

[ ]   The Age Discrimination in Employment Act (ADEA)

[ ]   The Americans with Disabilities Act (ADA)

[ ]   The Equal Pay Act (EPA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

[]   Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

David Phillips
ADR Assistant
(212) 336-3646

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s)



EXHIBIT-2



Case 1:11-cv-03624-MKB-JO Document 1 Filed 07/29/11 Page 16 of 102 PageID #: 16

# LOCAL 1199 JOB POSTINGS
## INTERNAL TRANSFER EMPLOYMENT OPPORTUNITIES
# IN-HOUSE STAFF ONLY

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
## DATE POSTED 03/10/2008 TRANSFER REQUEST DUE BY 03/19/2008
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| OPERATING ROOM | | OR TECHNICIAN |
|---|---|---|
| LOG# 2008-1069 | Day shift | Full Time |
| **LNAME** | **FNAME** | **DATE OF HIRE** |
| Peak | Glenna | 02/20/1989 |
| Andrews-Cole | Gemma | 04/16/1998 |
| Ranson | Tanya | 09/11/2000 |
| Seales | Jellene | 11/03/2003 |
| Smith | Aaron | 04/05/2004 |
| Jones-DeJonge | Glennis | 11/01/2004 |
| Bryan | Jillian | 04/06/2007 |

**SUMMARY:-** Assist surgeons and anesthesiologists before, during, and after surgery. They work under the supervision of registered nurses or operating room technician supervisors.
**EDUCATION:-** Nationally and/or Regionally Accredited High School Diploma
**EXPERIENCE:-** Previous experience as a OR Technician preferred
**CERTIFICATION:-** Certification required within one (1) year of employment.

EXHIBIT -3

# LOCAL 1199 JOB POSTINGS
## INTERNAL TRANSFER EMPLOYMENT OPPORTUNITIES
# IN-HOUSE STAFF ONLY

**************************************************************

### DATE POSTED 03/10/2008 TRANSFER REQUEST DUE BY 03/19/2008

**************************************************************

| LNAME | FNAME | DATE OF HIRE |
|-------|-------|--------------|
| Davis | Gwendolyn | 01/19/1999 |
| Mayers | Patricia | 04/25/2002 |
| Stevens | Jonelle | 10/03/05 |
| Campbell | Nicole | 01/15/2006 |
| Manragh | Dennese | 01/11/2008 |

**SUMMARY:** Performs a variety of billing and insurance verification duties. Responsible for compiling amounts owed to the facility by patients and third parties. Reviews and maintains records to insure accuracy. Maintains all payment records from insurance carriers.

**EDUCATION:** Nationally and/or Regionally Accredited High School Diploma. Knowledge of commonly used concepts, practices, and procedures in medical billing.

**EXPERIENCE:** Two (2) years experience in medical billing environment

**CERTIFICATION:** None Required

## HIM/ MEDICAL RECORDS _____ CLERK _____

| LOG: #2008-1024 | Day Shift & Every Other Weekend | Full Time |
|-----------------|--------------------------------|-----------|
| **LAST NAME** | **FIRST NAME** | **HIRE DATE** |
| Campbell | Nicole | 05/05/2006 |
| Davis | Gwendolyn | 04/19/1999 |
| Cole | Brenda | 09/17/2001 |
| Mayers | Patricia | 04/25/2002 |
| Fraser | Deslin | 05/06/2002 |
| Clunis | Tenicka | 08/02/2004 |
| Campbell | Nicole | 05/15/2006 |
| Robinson | Kerwin | 01/22/2007 |

**SUMMARY:** -Performs routine clerical duties using a computer all or part of the time. Performs general clerical and filing. Performs other related duties.

**EDUCATION:**-Nationally and/or Regionally Accredited High School Diploma

**EXPERIENCE:**-Two (2) years clerical experience

**CERTIFICATION:**-None-required

# LOCAL 1199 JOB POSTINGS
## INTERNAL TRANSFER EMPLOYMENT OPPORTUNITIES
## IN-HOUSE STAFF ONLY
**********************************************************************
### DATE POSTED 03/10/2008 TRANSFER REQUEST DUE BY 03/19/2008
**********************************************************************

PLEASE NOTE

Lateral transfers require 1 year of KJMC service in current position and a satisfactory work record.

Only submitted forms received by the employment office by the due date noted above will be considered. Forms submitted after the above due date or to another area other than the employment office will not be considered.

Transfer request forms may be picked up at the employment office in Room 314 Leviton Building

| NURSING LONG TERM CARE | | LICENSED PRACTICAL NURSE |
|---|---|---|
| LOG# 2008-1068 | 5N - Day Shift | Full Time |
| LOG# 2008-1067 | 5N - Day Shift | Full Time |

**SUMMARY:-** Under direct supervision of a Registered Nurse or physician, the LPN performs nursing duties in the care and treatment of patients on an assigned unit. The duties require the use of tact and judgment in the care and treatment of patients. May assist in the supervision of non-professional subordinates. Is cognizant of philosophy, standards, objectives, and policies of the Nursing Department. Performs related duties as required.

**EDUCATION:-** Graduation from an accredited school of practical nursing or completion of equivalent study in an approved program in professional nursing.

**EXPERIENCE:-** At least one (1) year clinical experience preferred

**CERTIFICATION:-** Current NYS Licensure or the eligibility to be licensed to practice as a practical nurse

| NURSING - LONG TERM CARE | | | CERTIFIED NURSING ASSISTANT | |
|---|---|---|---|---|
| LOG# 2008-1064 | | 5N | Night Shift | Part Time |

| LNAME | FNAME | DATE OF HIRE |
|---|---|---|
| Bowen | Ellen | 03/20/2006 |
| Bathersfield | Ovid | 04/12/2002 |
| Louis-Jean | Samson | 11/04/2002 |
| Seales | Jellene | 11/03/2003 |
| Peters | Dawn | 03/08/2004 |
| Cammock | Charlene | 11/07/2004 |
| Bryan | Jillian | 04/16/2007 |

| LOG# 2008-1066 | 5S | Day - Every Other Weekend | Part Time |
|---|---|---|---|
| LOG# 2008-1032 | 6E | Night Shift | Part Time |
| LOG# 2008-1065 | 6W | Day - Every other Weekend | Part Time |
| LOG# 2007-1030 | 9W | Day - Every Other Weekend | Part Time |
| LOG# 2007-1029 | 9W | Eve | Part Time |

**SUMMARY:** Provides direct patient care and related support. Performs other related duties

**EDUCATION:** Nationally and/or Regionally Accredited High School Diploma

**EXPERIENCE:-**None required

**CERTIFICATION:-**Certified as Nursing Assistant



# KINGSBROOK
### JEWISH MEDICAL CENTER

May 6th, 2008

Jillian John
552 Parkside Avenue
Brooklyn, NY 11226

I am pleased to confirm our offer to employ you as a **Staffing Manager** within the Rutland Nursing Home, with a starting salary of **$40,000** per annum. After successful completion and satisfactory performance of six months' employment, your annual salary will increase to **$43,000**. A condition of your hiring agreement stipulates that you will receive 22 Vacation Days, 12 Sick Days, 8 Holidays, and 4 Personal Days, which is the current benefit afforded to your position at this institution. In addition, you are entitled to receive 6.25% of your annual salary contributed to your Tax Deferred Annuity. Also, your health benefits will become effective immediately. We anticipate a start date of May 4th, 2008.

Please acknowledge your acceptance to this offer by signing below.

Once again, welcome and we look forward to your professional contribution to the Kingsbrook family.

Very truly yours,

Tamika T. Bowen
Employment Manager

Accepted: _____

Date: 5/7/08

Cc:   Mary-Anne Rose
Cc:   Gemma Moore
Cc:   Employee File

EXHIBIT — 4

The information in this electronic mail message is privileged and confidential, and intended for the addressee only. It is protected by federal and state law which prohibits you from making any further disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law. If you are not the intended recipient, the disclosure, copying distribution or use of the contents of this electronic message (including any attachment) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

**From:** Kay, Christine
**Sent:** Friday, September 19, 2008 3:31 PM
**To:** Liggins, Earnest
**Cc:** Rose, Mary Anne; Moore, Gemma; Mohammed-Oliver, Stacey
**Subject:** Issue with Jillian John
**Importance:** High

Good afternoon.

It is my understanding that Ms. John, Staffing Manager has contacted Human Resources reguarding her time.

Ms. John worked her usual shift on Monday, 9/15/2008 and additional hours until 11pm. On Wednesday, 9/17/2008, Ms. John worked her usual shift and additional hours until 9:19pm. Ms. John took time back for the additional hours from Monday on Thursday, 9/18/2008. Ms. John called me this afternoon asking me what will happen to the 6 additional hours from Wednesday. I explained that all time back for additional hours must be used in the same pay period, they do not carry over.

I am assuming that Ms. John was not happy with my response and that is what prompted her to call Stacey.

Please advised and thank you for your time,

Christine

Christine Kay

Director of LTC Resources

EXHIBIT — 5

Earnest Liggins, PHR

Director, Human Resources

"Serving Those Who Serve Our Community"

---

**From:** Moore, Gemma
**Sent:** Friday, September 19, 2008 3:38 PM
**To:** Kay, Christine; Liggins, Earnest
**Cc:** Rose, Mary Anne; Mohammed-Oliver, Stacey
**Subject:** RE: Issue with Jillian John

I am the one that called Stacey not Jillian. I just felt that with the amount of time that she has put in, in order to ensure that the payroll was always on time, she did not have to go through all this beauracy to get time back. At this time Jillian is not the only one that is feeling as if she is being walked over on.

## Gemma B. L Moore RN, MHA, RACT-CT

## Director of Nursing Services

## Rutland Nursing Home

## Suite: DMRI RM 101

P- (718) 604-5418

F (718) 304-5622

**E-mail:** Gmoore@kingsbrook.org

Christine,

Thank you for following-up on our request and providing the necessary information.

Gemma/Mary Anne,

This was one of the concerns raised when Jillian took the non-union "Manager" position. Ms. John is salaried and the presumption is our salaried employees are not constantly "counting" hours. We certainly work with employees whom assist during difficult periods and provide flexible hour arrangements but this seems to be going farther. Unless I am missing something, is there a reason for the excessive hours? Is Jillian meeting deadlines? Are there reasons supporting "excessive" hours?

At this point we have a couple of options:

1.  Reclassify Jillian's position to a unionized clerk position.

2.  Explore options to provide more coverage.

I'll be the first to say we should be flexible in allocation of time, but this is not the first instance I am hearing concerns about her counting time.

We need to address Jillian's issues; maybe she is not happy in the staffing manger role. From a management perspective, we all support the organization to get the job done, and I am sorry Jillian and anyone else feel's she is "being walked over on."

Please advise on your expectation relative to Jillian going forward.

Regards,

Earnest

**From:** Moore, Gemma
**Sent:** Friday, September 19, 2008 4:19 PM
**To:** Liggins, Earnest; Kay, Christine
**Cc:** Rose, Mary Anne; Mohammed-Oliver, Stacey
**Subject:** RE: Issue with Jillian John

Earnest,

I do feel that this is being looked at one sidedly. Jillian is not counting hours or she would have been asking for more time. Even if she is in a managerial role, we all have to be fair. I know everyone would want to reclasify her and remove her from the staffing manager's position, but would this be right? Does this mean that as a manager she now has no voice and if she does question anything then she should be removed from the position? . I know managers and directors who work and get their time back. The other managers get compensated for their time other ways. She worked over on Wednesday, today is Friday, how can she get the time back during the current pay period? How can you ask if Jillian is meeting deadlines when all the pay roll has been going out on time? We all need to remember that she has been orienting the staffing clerk that just finished orientation on Friday September 12, 2008. If this is your position, then I see then that she should just have to be MUTE from now on and just take what is coming to her. If she cannot get a fair hearing from HR then I guess the writing is on the wall. Thank you.

**Gemma B. L Moore RN, MHA, RACT-CT**
**Director of Nursing Services**
**Rutland Nursing Home**
**Suite: DMRI RM 101**
P- (718) 604-5418
F (718) 604-5622
E-mail: Gmoore@kingsbrook.org

The information in this electronic mail message is privileged and confidential, and intended for the addressee only. It is protected by federal and state law which prohibits you from making any further disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law. If you are not the intended recipient, the disclosure, copying distribution or use of the contents of this electronic message (including any attachment) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the original message and all copies.

**From:** Liggins, Earnest
**Sent:** Friday, September 19, 2008 3:51 PM
**To:** Moore, Gemma; Kay, Christine
**Cc:** Rose, Mary Anne; Mohammed-Oliver, Stacey
**Subject:** RE: Issue with Jillian John

# KINGSBROOK
### JEWISH MEDICAL CENTER
**EMERGENCY DEPARTMENT**
585 Schenectady Ave Brooklyn, NY 11203
718.604.5000    www.kingsbrook.org

**Disposition Summary** (for discharged patient; English)

Patient: John, Jillian

SS #: 075804641
DOB: 3/13/1972
Age: 36yr

Mailing Address: 552 Parkside Ave,
B4
City: Brooklyn        NY        11226

Home Ph: (718)703-0833

Arrival Time: 9/30/2008 2:04pm
Dispo Summary Printed: 9/30/2008 5:34pm

Disposition: Home
Rm (last): Crdc

RN Triage: _____
RN Dispo: _____
MD ED: Rose, Jonathan M.D.

RN Eval: _____
Mlp/Res: _____

PMD: Hertz MD
Referring MD: No Kjmc Md
Chief Cmplnt: Chest Pain

PMD Ph: _____
Referring MD Ph: _____

Dx 1: Chest Pain (Other)

Engl Dx 1: CHESTPAI.ESW        ICD-9 1: 786.59

Follow-up 1: Wubshet, Berhane M.D.
9408 Flatlands Ave

Brooklyn        Ny        11236
Follow-up 1 Date: As soon as possible

F/U MD Ph: 718-272-0977
F/U MD Fax: 718-272-1088

---

### Calls

| Name | Comments | Requested By | Call # | Returned |
|------|----------|--------------|--------|----------|

**All Rows Are Empty!**

---

Other Instr: None

## MY SIGNATURE BELOW INDICATES:
> I have received and understood the oral instructions regarding my current medical problem.
> I will arrange follow-up care as instructed above.
> I acknowledge receipt of the written instructions as outlined on this and any previous page(s).
  I will read and review these instructions.
> I authorize _____ Hospital/_____ Medical Center to disclose information from this Emergency Department
  record about my identity, diagnosis, test results, and treatment, including psychiatric conditions, drug and
  alcohol use/dependencies; or HIV or AIDS testing or status, to (initial all that apply).

_____ the follow-up physician listed above

_____ my primary care physician _____

This consent is valid for 90 days unless revoked in writing by me.

*EXHIBIT – 6*

X_____    X_____
*Patient (or Legal Guardian) .................................. Signature Staff (Witness) Signature*

Patient: John, Jillian
MD ED: Rose, Jonathan M.D.

Dt. Printed: 2/10/2008 5:34pm

RN Eval: _____
RN Dispo: _____

## AFTERCARE INSTRUCTIONS

We are pleased to have been able to provide you with emergency care. Please review these instructions when you return home in order to better understand your diagnosis and the necessary further treatment and precautions related to your condition. Your diagnoses and prescribed medications today are:

This page is not a prescription.

Dx 1: Chest Pain (Other) _____

### General Information on CHEST PAIN
(cause unknown)

The word "chest" refers to the part of the body below the neck and above the belly. The chest contains many different structures including the ribs, heart, lungs, trachea, esophagus, muscles, lymph nodes, nerves and blood vessels. A problem with any one of these structures can cause pain in the chest. Some of the more common causes of chest pain include: sore muscles, esophageal reflux ("heartburn"), bronchitis, pleurisy and anxiety.

Sometimes careful examination reveals the source of chest pain, but often it does not. In a private office or emergency department, it may not be possible to find the exact cause of a particular episode of chest pain.

What are the risks?

Most cases of chest pain get better within 12 to 48 hours and cause no serious medical problems. However, there is always a small chance that the pain may be an early sign of a potentially serious medical problem such as pneumonia, an ulcer or even a heart attack. Serious problems are more likely to occur in people who:

1. have had previous heart or lung problems,
2. smoke,
3. have high blood pressure, high cholesterol or diabetes,
4. have other family members who have had heart attacks or
5. are over 50 years old.

Note: If you are being sent home from the office or emergency department, your doctor has already decided that it is very unlikely your current episode of chest pain is the result of a serious medical problem and therefore you do not need to be admitted to the hospital at this time. Your doctor may decide, however, that you need additional tests and/or a repeat examination at a later date.

### INSTRUCTIONS
1) Rest. Avoid any strenuous physical exertion until after you are feeling better.
2) Don't smoke.
3) Aspirin, ibuprofen (Advil) or acetaminophen (Tylenol) may help ease the pain. WARNING: Do not take these drugs if you are allergic to them. Do not take these drugs if you are already taking a prescription pain medication. DON'T GIVE ASPIRIN TO ANYONE LESS THAN 18 YEARS OLD.
4) SEEK IMMEDIATE MEDICAL ATTENTION if:
   A) the pain (or numbness) spreads into the jaw or arms,
   B) the pain gets worse when you walk or run,
   C) you develop vomiting, a fever, black stools, a persistent cough, bleeding or dizziness.
5) CALL AN AMBULANCE if you develop severe chest pain, difficulty breathing, pass out or start to sweat a lot for no apparent reason.

Follow-up 1: Wubshet, Berhane M.D. _____
9408 Flatlands Ave _____
Brooklyn _____   Ny   11236 _____

F/U MD Ph: 718-272-0977
F/U MD Fax: 718-272-1088

Follow-up 1 Date: As soon as possible _____

Other Instr: None _____
_____
_____



EXHIBIT - 7

**John, Jillian**

| | |
|---|---|
| **From:** | John, Jillian |
| **Sent:** | Monday, August 03, 2009 8:34 AM |
| **To:** | Mckeon, John |
| **Cc:** | Molloy, Kevin; Brady, Dr. Linda; Mohammed-Oliver, Stacey; Rose, Mary Anne; Moore, Gemma; John, Kathleen |
| **Subject:** | Unfair treatment |

Dear Mr McKeon,

I was informed by Ms Gemma Moore, DNS that during a conversation with you on Friday July 31, regarding allegations regarding my integrity with regards to my employment at KJMC. You informed her that because of these allegations you will prefer not to terminate me, but would rather accept my letter of resignation.

   This morning Monday August 3rd, I showed up for duty as scheduled, and Mr Richards, the newly hired part time Staffing Associate who works on the evening tour was also present at work under the directive of Ms Christine Kay, to replace me for the rest of the week. I did not called out sick, nor did I inform anyone that I would not be at work.

I have no idea why Ms Kay is even involved in this issue, because even if I was not going to be at work, I believe that that Ms Kathleen John, Assoc.DNS should have been the one to arrange replacement in the absence of Ms Gemma Moore, DNS. As a matter of fact in the past whenever Ms Valerie Bryant my predecessor was going to be absent from work, she would always call me to come in. Similarly since Mr Richards's employment I have been the one calling him to come in whenever I am not going to be at work. It appear as though a decision was made to terminate me without even a discussion with me regarding the allegations.

At this point, I am letting you know that I have no intention of resigning my position because I have done nothing wrong.

Respectfully.

Jillian John
Staffing Manager
Rutland Nursing Home
585 Schenectady Avenue
Brooklyn, NY 11203
PH# (718) 363-6522
jjohn@kingsbrook.org
"Change your thoughts and you can change the world"

*EXHIBIT — 8*

The information in this electronic mail message is privileged and confidential, and intended for the addressee only. It is protected by federal and state law which prohibits you from making any further disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law. If you are not the intended recipient, the disclosure, copying distribution or use of the contents of this electronic message (including any attachment) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the

JOSEF H. HERTZ, M.D.
INTERNAL MEDICINE
700 UTICA AVENUE
BROOKLYN, NY 11203

(718) 221-1111                          DEA # AH 8906129
                                        LIC. # NY1128500

NAME _____ AGE __

ADDRESS _____ DATE 8/3/09

Rx VOID IF NOT SAFETY GREEN BACKGROUND

**R**    Out 8/3 — 8/9/09
         for Stress.
         Return 8/10/09

JOSEF H. HERTZ, MD
700 UTICA AVENUE
BROOKLYN, NY 11203
718-221-1111
NYS LICENSE # 128500

THIS PRESCRIPTION WILL BE FILLED GENERICALLY
UNLESS PRESCRIBER WRITES 'd a w' IN THE BOX BELOW

Refill _____ times

NR ___ Label ___

Dispense As Written

6KIM0061778

EXHIBIT 9

KINGSBROOK JEWISH MEDICAL CENTER

David Minkin Rehabilitation Institute

## SICK/INJURY AUTHORIZATION

**TO: EMERGENCY ROOM** ☐ **HEALTH SERVICE** ☐

DATE: _8/3/09_ TIME: _9³⁰_ P.M.

DEPARTMENT: _Nursy_

NAME OF EMPLOYEE: _O'Jillian John_

UNIT: _NO_ SHIFT: _._

COMPLAINT: _Emo Unable to functn_
_due to emotional stress._

INJURY ☐ ILLNESS ☐

WHILE ON DUTY ☑ OFF DUTY ☐

NOTE: REFER TO ADMINISTRATIVE DIRECTIVE #86

_____
Department Head/Supervisor

EMERGENCY ROOM/HEALTH SERVICE

DISPOSITION: _Emotional Stress_
_BP 140/86 Employee desire to_
_be off duty at this time._

Physician _____
(Signature)

Form 4-1816
Revised: 1/87



# KINGSBROOK
**JEWISH MEDICAL CENTER**
**HUMAN RESOURCES DEPARTMENT**

**VIA Federal Express**

August 3, 2009

Jillian John
253-57 148th Drive
Rosedale, NY 11422

Dear Ms. John:

This letter serves to inform you that effective today, August 3rd, 2009, you are hereby suspended pending investigation. This suspension from employment is based upon a reasonable suspicion of inappropriate conduct within our facility.

We are committed to concluding this investigation as rapidly as is possible and will require your cooperation moving forward. Any contact with any other employee of the Medical Center during this period of investigation will be deemed to be interference with an on going investigation; which would be grounds for your immediate termination of employment. We will be contacting you to arrange a time during normal work hours for an interview concerning your conduct.

We thank you for your cooperation in this matter.

Sincerely,

John McKeon
VP Human Resources

cc: Mary Anne Rose, Vice President of Long Term Care
Gemma Moore, Director of Rutland Nursing Home
Employee (Federal Express)
File

EXHIBIT —10



Uniform Image Brochure 2003

## U.S. Equal Employment Opportunity Commission

### What You Should Know Before You File A Charge With EEOC

**EEOC—New York District Office**
33 Whitehall Street
5th Floor
New York, NY 10004
800-669-4000 (Voice)
800-669-6820 (TTY)
WWW.EEOC.GOV

## What You Should Know Before You File A Charge With EEOC

### CAN YOU FILE A LAWSUIT BEFORE WE FINISH OUR INVESTIGATION?

If you want to file a lawsuit in federal court be- fore we finish our investigation, you may ask us in writing for a letter or a notice of your right to sue. If you ask more than 180 days after filing a charge, the law requires us to give it to you. If you ask before 180 days have passed, we can give you the notice only if we cannot finish our investigation within 180 days. In most cases, once we give you a notice of your right to sue, we close the case. If you file an age discrimina- tion charge, however, you can file a suit in court after 60 days without such a notice.

### WHAT HAPPENS AFTER THE INVESTIGATION?

After we finish looking into your claims, we let you and the employer know what we decide. Sometimes, the information is not enough to show that the employer violated the law. In that case, we will dismiss your charge and give you a letter or notice of your right to file suit in fed- eral court within 90 days. If you do not file a suit within 90 days, you will lose your right to sue in court. When the information shows that the employer probably violated the law, we try to settle the case in conciliation.

### WHAT IS CONCILIATION?

When the EEOC finds that the employer proba- bly violated the law, we invite you and the em- ployer to try to settle the case. If the EEOC, you and the employer agree on how to settle your case, we will close the case. If the EEOC, you and the employer do not agree, we will decide whether to file a lawsuit in federal court or whether to provide you with a letter or a notice of your right to sue so that you can file your own lawsuit. You then have 90 days to file suit.

### WHEN DOES THE EEOC LITIGATE?

In some cases, when the EEOC finds that an employer probably violated the law, we file a lawsuit in federal court. We get about 80,000 charges of discrimination each year but we only file about 325 lawsuits each year. When the EEOC decides whether to file a lawsuit, we look at how serious the violation is, what the legal issues are, and whether other people would benefit from the lawsuit. If we decide not to sue in your case, we will give you a right to sue letter so that you can file your own lawsuit in court. You then have 90 days to file suit.

### IS RETALIATION AGAINST THE LAW?

It is against the law for an employer to retaliate against you because you complained about job discrimination, because you gave evidence in a job discrimination matter, or because you filed a charge of job discrimination with the EEOC. If this happens to you, you should contact us as soon as possible to talk about whether you should file a retaliation charge.

### KEEP US INFORMED

Once you file a charge with the EEOC, you must tell us if you move or get a new phone number. We may need to talk to you to get more information. If the EEOC cannot reach you to get necessary information, your charge may be dismissed.

### DO YOU HAVE MORE QUESTIONS?

You can find the answers to many of your questions on our website, www.eeoc.gov. You can access an interactive questionnaire at https://apps.eeoc.gov/eas to help you decide if the EEOC is the most appropriate agency to assist you. You can also find information on where to file an employment discrimination charge.

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Jillian M. John
552 Parkside Avenue
Apt B4
Brooklyn, NY 11226

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2009-04093 | Jedediah Fix, Investigator | (212) 336-3777 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Kevin J. Berry_                    4/27/2011

Enclosures(s)

**Kevin J. Berry,**
**District Director**

(Date Mailed)

cc:  **KINGSBROOK JEWISH MEDICAL CTR**
585 Schenectady Ave
Brooklyn, NY 11203

**Barbara Hoey**
**Kelly, Drye and Warren LLP**
101 Park Avenue
New York, NY 10178

**Michael Borrelli and Associates, PLLC**
350 5th Ave, Suite 3601
New York, NY 10118

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
-----------------------------------------------------------------X
GEMMA MOORE,                                              :
                                                         :
                         Complainant,                    :
                                                         :
         -against-                                       :        **AFFIDAVIT OF**
                                                         :        **GEMMA MOORE**
KINGSBROOK JEWISH MEDICAL                                 :
CENTER                                                    :        520-2009-04093
                                                         :
                         Respondent.                     :
-----------------------------------------------------------------X


STATE OF NEW YORK     )        ss:
COUNTY OF NASSAU      )

     **GEMMA MOORE, under the penalty of perjury deposes and says:**

1. I worked at the Kingsbrook Jewish Medical Center ("KJMC") as the Director of Nursing Services for Rutland Nursing Home from on or about February 13, 2003 until December 31, 2009.

2. I have personal knowledge of the matters contained in this affidavit, and, if called upon, I could and would testify to each of the statements made herein.

3. I am submitting this Affidavit in connection with the above Charge of Discrimination ("Charge") against Respondent, KJMC to address KJMC's mischaracterizations of facts.

4. I have thoroughly reviewed all of the information contained in the above Charge and believe it to be accurate.

5. Specifically, I believe that KJMC terminated Ms. John as a form of discrimination based on Ms. John's African American race and Grenadian national origin.

6. I believe that the stated reasons provided by KJMC for the termination of Ms. John were merely pretextual, and were only designed to hide KJMC's true illegal discriminatory motives.

7. I have also thoroughly read the position statement submitted by the KJMC, as well as all of the documentary evidence attached by the KJMC's to its position statement.

8. I have known, Ms. Jillian John (Ms. John"), the named Complainant in the above-captioned Charge of Discrimination currently pending before the Equal Employment Opportunity Commission, since 2003 from working at KJMC.

9. In 2008, when the Staffing Manager position was posted, it listed a Bachelor's Degree as a requirement. I sent an e-mail to Mary Ann Rose ("Ms. Rose"), the Vice President of Long-Term Care at KJMC and John McKeon ("Mr. McKeon"), the Vice President of Human Resources stating the unfairness of a Bachelor's Degree requirement, when the previous Staffing Manager did not have a Bachelor's Degree and performed the job efficiently for over 35 years.

10. I also personally went to Mr. McKeon to advocate for Ms. Jillian John to get the Staffing Manager position because Ms. John had face opposition from Ms. Rose in her obtainment of the position.

11. I believe that Ms. Rose and Ms. Christine Kay (Ms. Kay), Director of Long-Term Care Resources, have a very close personal relationship and Ms. Kay seems to have a lot of influence over Ms. Rose.

12. Currently, Ms. Kay is performing all of the tasks under the Staff Manager position, and she does not have a Bachelor's Degree.

13. Mr. Allison Richards ("Mr. Richards") is currently an Assistant to Ms. Kay, and he did not replace Ms. John. Specifically, he works as a Staffing Associate with Ms. Kay as his supervisor, and he was never given the Staffing Manager position.

14. Further, Ms. John did not handle all "staffing" matters for the nursing personnel. Specifically, agency employees (non-staff employees) would first give their availability to the KJMC's ATM (At the Moment) department, who in turn give the schedules to the staffing personnel.

15. As for the staff employees (full time and part time), the nursing supervisors would prepare the work-schedules.

16. The daily assignments were given by the charge nurse or supervisors on the unit level.

2

17. The records of sick calls and lateness were kept by Ms. Kay who in turn sent a report to the Director of Nursing (DNS), formerly me or my assistant Kathleen John, the Associate Director of Nursing (ADNS).

18. As for vacation and holiday requests, these requests were approved or denied by the various nursing supervisors, DNS or ADNS.

19. The Respondent has mischaracterized Ms. John's duties in their position statement because all overtime had to be approved by me as the DNS or the ADNS.

20. Ms. John upheld the policies of KJMC. For instance, Ms. John reported on Ms. Denise Bonny, a certified nurse assistant who tried to bribe her for favors. Ms. Bonny received a verbal warning for her actions from both the ADNS and DNS.

21. A susu is a traditional way of savings by Caribbean Americans.  It involves a pool of individuals, who pool together a certain amount of money.  The money is then kept by one individual and each person is paid out every rotation (weekly, bi-weekly or monthly).

22. Everyone gets back exactly what they have contributed.  This type of saving helps people who are unable to get a loan from a bank and also allows an individual to get a lump sum of money without paying a lot of interest to a bank.

23. No one gains from a susu transaction, and the activity is not illegal.

24. The number of people within the susu is not relevant.

25. Susu is comparably to a lotto pool, except everyone receives the money they contributed in the end.

26. At KJMC, lotto pools are frequently conducted and Ms. Rose, a managerial level employee, actively participated in this activity money administrative staff purchase lottery tickets.

27. Many Caucasian employees participate in the lotto pools.

Dated: March 22, 2011
      Carle Place, NY

GEMMA MOORE

Notary Public

Sworn to and subscribed before me this 22ᴺᴰ day of March 2011.

Stephanos Zannikos
Notary Public, State of New York
ID #: 02ZA6197408
Qualified in Nassau County
My Commission Expires: 12/01/20/2

4

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
----------------------------------------------------------X
JILLIAN JOHN,                                         :
                                                      :
                        Complainant,                  :
                                                      :
            -against-                                 :        **AFFIDAVIT OF**
                                                      :        **JILLIAN JOHN**
KINGSBROOK JEWISH MEDICAL                             :
CENTER                                                :        520-2009-04093
                                                      :
                        Respondent.                   :
----------------------------------------------------------X


STATE OF NEW YORK    )      ss:
COUNTY OF NASSAU     )

     **JILLIAN JOHN, under the penalty of perjury deposes and says:**

1.  I am the named Complainant in the above-captioned Charge of Discrimination, currently pending before the Equal Employment Opportunity Commission.

2.  I have personal knowledge of the matters contained in this affidavit, and, if called upon, I could and would testify to each of the statements made herein.

3.  I am submitting this Affidavit in connection with the above Charge of Discrimination ("Charge") against Respondent, KJMC to address KJMC's mischaracterizations of facts.

4.  I have thoroughly reviewed all of the information contained in the above Charge and believe it to be accurate.

5.  I have also thoroughly read the position statement submitted by the KJMC, as well as all of the documentary evidence attached by the KJMC to its position statement.

6.  After reviewing the KJMC's position statement and those documents, I know that KJMC has misrepresented my job duties. As a Staffing Manager, I would distribute overtime equally to the employees who requested overtime and were available and willing to work, after the overtime shifts had been approved by the Director of Nursing (DNS), Gemma Moore or the Associate Director of Nursing (ADNS), Kathleen John.

7. At KJMC, all overtime shifts had to be approved by the DNS or ADNS.

8. As Staff Manager, my duties required that I input payroll data within the Ansos computer program, which works alongside the Kronos program. Whenever I needed access to the Kronos program, I was required to ask Ms. Christine Kay, Director of Long-Term Care Resources for assistance or a non-managerial employee, who held a lesser title than me.

9. The Kronos program is integral to ensure that employees are paid properly and I needed access to this program daily during my tenure as Staffing Manager.

10. A susu, is a traditional savings account, which is common in the Caribbean. The participants receive their original compensation that they put in the susu, at a later date.

11. Specifically, several people will come together to form a susu, which may span over a few weeks, and everyone must put the agreed amount into the savings. A susu collector does not charge interest or receive an tips, and ensures that everyone receives their personal savings, in its entirety, at an agreed upon date.

12. There is no number requirement for the amount of participants in a susu, and it is not an illicit scheme. Participants in the susu do not suffer any pecuniary lost or receive a financial gain by participating.

Dated:  March 22, 2011
        Carle Place, NY

_____                         _____
Notary Public                                                           JILLIAN JOHN

Sworn to and subscribed before me this _____ day of March 2011.

Stephanos Zannikos
Notary Public, State of New York
ID #: 02ZA6197409
Qualified in Nassau County
My Commission Expires: 12/01/20__

**JILLIAN JOHN**

552 Parkside Avenue Apt B4, Brooklyn NY 11226.  Phone (347) 627-9569; (718) 496-1614

**Objectives:**   To obtain a position in an organization that is dedicated to the promotion of growth of its employees and where my work experiences and abilities will be utilized.

**Experience:**

4/2008 -- 9/2009

Kingsbrook Jewish Medical Center, Rutland Nursing Home, Brooklyn, NY
*Staffing Manager*
- Orient new employee into staffing clerk position
- Supervise staffing clerk
- Ensure there is adequate nursing staff on duty on all shifts on a daily basis
- Ensure that all working schedules of the nursing department are completed on time for posting
- Data entry of all schedules into the computer
- Monitoring of employees time and attendance
- Responsible for tracking overtime, replacement of sick calls
- Assign nurses to units based on the acuity of the residents

10/2002 – 4/2008

Kingsbrook Jewish Medical Center, Rutland Nursing Home, Brooklyn, NY
*Staffing Clerk*
- Ensured that all the data entry for the eveng shift were entered into the computer
- Replaced sick calls for the upcoming shifts
- Reviewed the daily staffing sheets for the evening shift to ensure that there were adequate staff on each unit

3/25/1996 - 10/2002

Kingsbrook Jewish Medical Center, Rutland Nursing Home, Brooklyn, NY
*Certified Nursing Assistant*
- Responsible for rendering total care to the residents such as baths, transferring, toileting
- Encouraged and assisted the residents to complete their meals
- Took temperature, pulse respiration and reported to the charge nurse
- Reported any changes in the residents condition to the charge nurse

**Education:**

CNA Certification
GED

References available upon request

# KINGSBROOK JEWISH MEDICAL CENTER
# RUTLAND NURSING HOME

## MEMORANDUM

**TO:**            **ALL NURSING STAFF**

**FROM:**          **GEMMA MOORE, RN DNS**

**SUBJECT:**       **APPROVAL OF OVERTIME**

**DATE:**          **April 4, 2006**

EFFECTIVE IMMIDIATELY, ALL OVERTIME MUST BE APPROVED BY MYSELF, MR BEESHAM OR MS. KATHLEEN JOHN. **WITHOUT EXCEPTION,** PRIOR TO SCHEDULING **ANY OVERTIME,** THE SUPERVISOR REQUESTING OVERTIME MUST CONTACT THE ADMINISTRATIVE STAFF LISTED ABOVE IN THE ORDER IN WHICH THEY APPEAR. **COMPLIANCE WITH THIS <u>DIRECTIVE</u> IS MANDATORY.**

CC.   Bharat Beesham, Assoc. DNS
      Kathleen John, ADN
      Mary Ann Rose, VP LTC
      Michelle Edwards, Assoc. Adm

May 21, 2008

Ms. Yvette Clasrke, NCC
Rutland Nursing Home


Dear Ms. Clarke,
Mr. Battersfield was given overtime on Tuesday night after he was told by the staffing manager that he was not on to work overtime.  When I reviewed the work sheet, three extra part-timers were on in the case of sick calls.  There was no reason for Mr. Battersfield to work overtime.  Please be reminded that all overtime must be approved.  The employees are not the one to determine if they are to work overtime.  In future, kindly do not give overtime unless it is absolutely necessary.  Thank you.

Gemma Moore, RN
Director of Nursing

# KINGSBROOK JEWISH MEDICAL CENTER
# RUTLAND NURSING HOME

## MEMORANDUM

TO:   STAFF MEMBERS
     ALL CNM/SUPERVISORS

FROM:  GEMMA MOORE, RN DNS

DATE:  NOVEMBER 10, 2006

SUBJECT: SIGNING OF FORM 72'S

---

Please be aware that all Form 72's that is filled out requesting time off during the current schedule must be approved by myself, Mr. Beesham, Assoc. DNS, Ms. Kathleen John, ADNS.  This is without exception.
This has become necessary due to the overwhelming requests that have been approved leaving the nursing units without adequate staffing.
Adherence to this directive is mandatory.

Thank you.

C.C.   Bharat Beesham, Assoc. DNS
    Kathleen John, ADNS

**KINGSBROOK JEWISH MEDICAL CENTER**
**RUTLAND NURSING HOME**

**MEMORANDUM**

TO:              CLINICAL NURSE MANAGERS, NURSING CARE
COORDINATORS, SUPERVISORS, STAFFING
COORDINATOR, STAFFING CLERK

FROM:         GEMMA MOORE RN, DNS

SUBJECT:     **REQUEST FOR TIME OFF 3-11 SHIFT**

DATE:         MARCH 31, 2006

---

PLEASE BE INFORMED THAT EFFECTIVE IMMIDIATELY ALL
REQUEST FOR TIME OFF BY THE STAFF ON THE 3-11 SHIFT MUST
BE APPROVED BY MS. KATHLEEN JOHN, ADN.

THANK YOU.

CC.  Bharat Beesham, Assoc. DNS
      Kathleen John, ADN

**KINGSBROOK JEWISH MEDICAL CENTER**
**RUTLAND NURSING HOME**

**MEMORANDUM**

| | |
|---|---|
| **TO:** | **Clinical Nurse Managers/Supervisors** |
| **FROM:** | **Gemma Moore RN, DNS** |
| **SUBJECT:** | **Scheduling of overtime** |
| **DATE:** | **January 28, 2009** |

Please be informed that effective immediately, all overtime and ATM staff being called in to work added shifts must be approve by the DNS or ADNS.  I have instructed the Staffing Manager and Staffing Clerk that any staff member not approved to work extra time by the DNS or the ADNS is to be sent back home.
Any CNM or Supervisor not adhering to this directive will be dealt with.

Thank you.

C.c        Mary Anne Rose, VP LTC
           Kathleen John, Assoc. DNS
           Jillian John, Staffing Manager
           Pierre-Andre Edouard, Staffing Clerk

**From:** Rose, Mary Anne
**Sent:** Thursday, May 28, 2009 2:07 PM
**To:** Molloy, Kevin; Schmitt, John
**Cc:** Moore, Gemma; Edwards, Michelle
**Subject:** Variance Report - Summary for April 2009

**Attachments:** Monthly Variance Report 2009.xls

Attached please find summary of expense variances through April 2009.

Two areas need to be highlighted:

1.  Salaries for 6 East....currently **$36,000** over budget....this is due to fact that we are placing our overflow trach residents to this unit.  They are averaging 8 trach residents on this unit. Despite this increase in staffing costs for this unit, the overall salaries through 4/2009 are **$558,945 under budget.   Nursing is $458,720 under budget.**

2.  Other than salary expenses:   There were higher than usual expenses charged in several areas:  underpads/incontinent briefs (118,000 for April due to accruals)....I anticipate this will reverse in the next two months.

    Also, med surg supplies are extremely higher than budgeted.  Gemma is reviewing all charges to those departments with excessive med surg expenses.   Med surg supplies are **$40,000** over budget YTD.

    **OTS is $116,000 under budget YTD.**


Mary Anne Rose
Vice-President/Long Term Care
Kingsbrook Jewish Medical Center
Rutland Nursing Home
585 Schenectady Avenue
Brooklyn, New York
Office:   (718) 604-5221
Fax:     (718) 604-5622
E-mail:  mrose@kingsbrook.org

# KINGSBROOK JEWISH MEDICAL CENTER
# RUTLAND NURSING HOME

## MEMORANDUM

**TO:**           **ALL CLINICAL NURSE MANAGERS**
                            **NURSING CARE COORDINATORS / SUPERVISORS**

**FROM:**       **GEMMA MOORE, RN DNS**

**SUBJECT:**    **APPROVAL OF VACATION TIME**

**DATE:**       **JANUARY 14, 2009**

---

Please be informed that vacation requests from March 16th and going forward cannot be approved until after March 15th in order to approve time by seniority.

After March 15th, vacation time is approved on a first come basis. Please keep a record of all time approved to insure that there is sufficient staff on duty at all times.

Please bear in mind that around the Christmas and New Year holidays, staff members cannot be approved both holidays including weekends off. Please check with the staffing Manager / staffing clerk to clarify the employees' weekend to work prior to approval of vacation around these holidays.

Thank you for your co-operation.

C.C.   Kathleen John, Assoc. DNS
        Jillian John, Staffing Manager
        Andre Pierre Edouard, Staffing Clerk

# KINGSBROOK JEWISH MEDICAL
# RUTLAND NURSING HOME

## MEMORANDUM

**TO:**      **Ms. Coombs, NCC**

**FROM:**    **Gemma Moore, RN DNS**

**DATE:**    **August 7, 2007**

**SUBJECT: Scheduling of overtime**

---

PLEASE DO NOT SCHEDULE MS. MARIE PIZARRO AND MS. LORNA
WILLIAMS TO WORK ANY MORE OVERTIME UNTIL FURTHER NOTICE.
THESE EMPLOYEES HAVE WORKED OVER 46 OVERTIME SHIFTS ALREADY
FOR THE YEAR.  THERE ARE OTHER EMPLOYEES WHO CAN BE USED FOR
OVERTIME IF THE NEED ARISES.  PLEASE NOT THAT THIS SITUATION WILL
BE MONITORED.

PS.  THIS MEMO IS FOR YOU AND NOT TO BE SHARED WITH ANYONE ELSE.

THANK YOU.

CC.      V. BRYANT, STAFFING COORDINATOR
         J. JOHN, STAFFING CLERK

## John, Jillian

| | |
|---|---|
| **From:** | John, Jillian |
| **Sent:** | Monday, August 03, 2009 8:34 AM |
| **To:** | Mckeon, John |
| **Cc:** | Molloy, Kevin; Brady, Dr. Linda; Mohammed-Oliver, Stacey; Rose, Mary Anne; Moore, Gemma; John, Kathleen |
| **Subject:** | Unfair treatment |

Dear Mr McKeon,
I was informed by Ms Gemma Moore, DNS that during a conversation with you on Friday July 31, regarding allegations regarding my integrity with regards to my employment at KJMC. You informed her that because of these allegations you will prefer not to terminate me, but would rather accept my letter of resignation.

This morning Monday August 3rd, I showed up for duty as scheduled, and Mr Richards, the newly hired part time Staffing Associate who works on the evening tour was also present at work under the directive of Ms Christine Kay, to replace me for the rest of the week. I did not called out sick, nor did I inform anyone that I would not be at work.

I have no idea why Ms Kay is even involved in this issue, because even if I was not going to be at work, I believe that that Ms Kathleen John, Assoc.DNS should have been the one to arrange replacement in the absence of Ms Gemma Moore, DNS. As a matter of fact in the past whenever Ms Valerie Bryant my predecessor was going to be absent from work, she would always call me to come in. Similarly since Mr Richards's employment I have been the one calling him to come in whenever I am not going to be at work. It appear as though a decision was made to terminate me without even a discussion with me regarding the allegations.

At this point, I am letting you know that I have no intention of resigning my position because I have done nothing wrong.

Respectfully,


Jillian John
Staffing Manager
Rutland Nursing Home
585 Schenectady Avenue
Brooklyn, NY 11203
PH# (718) 363-6522
jjohn@kingsbrook.org
*"Change your thoughts and you can change the world"*

EXHIBIT—8

The information in this electronic mail message is privileged and confidential, and intended for the addressee only. It is protected by federal and state law which prohibits you from making any further disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law. If you are not the intended recipient, the disclosure, copying distribution or use of the contents of this electronic message (including any attachment) is prohibited. If you have received this electronic message in error, please notify the sender immediately and destroy the

Case 1:11-cv-03624-MKB-JO   Document 1   Filed 07/26/11   Page 49 of 102 PageID #: 49

**From:** jillyj1@optonline.net
**To:** g5375@aol.com
**Subject:** (no subject)
**Date:** Thu, Oct 2, 2008 9:18 pm
**Attachments:** Letter_to_Mr._McKeon_(Draft).doc (30K)

This was very hard to do from this very silly web site.

Jillian John
552 Parkside Avenue, Apt B4
Brooklyn, NY 11226


October 2, 2008


Mr. John McKeon, VP Human Resources
Kingsbrook Jewish Medical Center
585 Schenectady Avenue
Brooklyn, NY 11203

Dear Mr. McKeon,

      It is with the utmost reluctance that I formulate this letter to you, but after much consideration and reconsideration, I have decided that it is only prudent to bring you up to date with what I have been experiencing since Friday November 2, 2007 after I did question a decision that was made not to give me full access to Kronos. I know that in doing so Title VII of the civil rights act of 1991 was violated which states that: "Management must not limit, segregate or classify applicants or employees in anyway that would deprive or tend to deprive an individual of employment opportunities or adversely affects his status because of race, color, religion, sex, or national origin. This includes wage increases, benefits, and **other job practices**". I feel that I was discriminated against because I am disliked by Ms. Kay who made the decision not to give me full access to Kronos, when others with the same job description and at that time held the same position title as me were given full access to kronos.

1.     Even before Ms. Bryant's retirement, I have always made myself available to fill in whenever she was off. After she retired, I was very disappointed and hurt to see that the educational requirement to apply for the staffing managers position was upgraded to a bachelors degree even though the job description and/or classification was not changed in any way. I found this very strange, since my predecessor did not hold an associate's nor a bachelor's degree and I had made it very clear to all in the administrative suite that I was interested in applying for the position when Ms. Bryant retired; but I did know that some members of the administrative staff was not in agreement to hire me as the staffing manager.

2.     At the ending of every pay period, an accuracy report is being generated by Ms. Kay, enumerating all the errors that occurred due to staffing data entry. This has never been done before when Ms. Bryant was the staffing manager. I do not understand the rationale for this, but I think that this is an attempt to keep a paper trail on me so that it could eventually lead to my termination. Just to inform you though, that there could be an average of ten (10) errors in a payroll of over 400 employees, which I think is phenomenal.

3.     As a manager I am aware that I would have to do what is necessary to get the job done, even if it means working extra hours without compensation. I willing do this, but there are times when I would need to be compensated for my time. I bring to your attention an incident which occurred on Friday September 19, 2008. Ms. Kay called me and told me that she will be giving me time back on Thursday September 18th for extra time worked on Monday September 15, 2008 and she does not know what I will do for Wednesday September 17th, that I was on my own because I can only get time back within the same pay period which was ending that Saturday September 20th. Ms. Kay was very condescending in the manner in which she spoke to me. It is everyone's opinion that I should act the part of a manager which means giving extra time to the facility, but Ms. Kay, who holds the title of "Director" is allowed to take time back every time she works the Sunday before the payroll, even though she leaves the facility every day at or before 4 PM. I think that two different standards are being used to determine how a manager and a "director" should act. Ms. Moore has requested that I be paid for Wednesday September 17, and Saturday September 20th and was not even given the courtesy of a response from the VP of LTC. I think that this was a mean and calculated act on her part and just goes to show her dislike for me. I just need to let you know that due to the magnitude of work that the staffing desk entails, it is counter productive for me to have time back anyway, because when I return, I have double the amount of work to be completed. I feel that I should be given the opportunity as the other managers, supervisors, and administrative coordinator, the opportunity to be compensated through ATM agency, because there are times that I will work over up to 14 to 21 hours per week in an effort to ensure that the payroll is on time, and would not be able to get time back within the same week or pay period.

4.     The administrative suite at Rutland Nursing Home used to be a very nice place to come to work. Everyone use to get along well until the transfer of Ms. Kay to the payroll position. Now the atmosphere in the office is tense and not conducive to the development of cohesive relationships. She is very controlling and seems to feel that she is now in charge of everyone; and the sad thing is, nothing can be said about it because I feel that nothing will be done about it any how and I will only be subjected to victimization. I have to be constantly asking information of Ms. Kay in order to complete my daily tasks due to the fact that she does not want me to have access to kronos. This is very frustrating and impedes my ability to complete my work in a timely manner.

I am requesting that you intervene and do something to remedy the situation quickly please. Thanking you for your quick response. Thank you.


Jillian John,


Staffing Manager

*The Law Office of*
# BORRELLI & ASSOCIATES, P.L.L.C.

One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone (516) 248-5550
Fax (516) 248-6027

350 Fifth Avenue, Suite 3601
New York, NY 10118
Telephone (212) 679-5000
Fax (212) 967-3010
www.employmentlawyernewyork.com

March 23, 2011

*Via Regular Mail*
Louise Newsome
Federal Investigator
Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

      Re:    *Jillian John v. Kingsbrook Jewish Medical Center;*
             *EEOC Charge No. 520-2009-04093*

Dear Investigator Newsome:

      The following will serve as a rebuttal to the position statement of Respondent Kingsbrook Jewish Medical Center (hereinafter "KJMC" or "Respondent"), dated September 24, 2009, to the above-referenced Charge of Discrimination ("Charge"). In this rebuttal, Complainant Ms. Jillian John ("Ms. John" or "Complainant") will provide further information to support her allegations and will rebut any inaccuracies put forth by Respondent, whether they take the form of misstatements of fact, law or unsustainable conclusions.

      Specifically, KJMC is obstinate in the manner in which it understates the discrimination that Ms. John, a black female of Grenadian descent; endured and was unjustly subjected to by Respondent. Since 2007, Respondent has egregiously humiliated and demeaned Ms. John because of her race and/or national origin by denying her access to a necessary job-related computer program known as Kronos. Despite the fact that KJMC granted similarly situated workers full access to the computer program; it required Ms. John to have then-Administrator Coordinator, Christine Kay ("Kay"), a Caucasian female input the data on her behalf.

Further, KJMC broadly mischaracterizes the nature of a "susu"[1] savings account, which KJMC then used as a pretext for Complainant's wrongful termination. Lastly, KJMC has markedly mis-analyzed the law. The continuing violation doctrine is a well-established doctrine, which enables discriminatory acts occurring outside the 300 day statute of limitations to be taken into account when the discrimination is part of a series of continuing acts, as is the case here. Therefore, Ms. John's claims prior to November 28, 2008 are certainly relevant and a finding of probable cause should be found.

## ARGUMENT

As discussed in detail below, KJMC's position is demonstrably false, since Complainant provided a multitude of examples where KJMC subjected her to racial discrimination and retaliation over the course of her employment. Furthermore, the temporal proximity between Complainant's complaints of discrimination and the adverse employment actions evinces KJMC's discriminatory and retaliatory animus towards Complainant.

## I.    PLAINTIFF ALLEGED A PRIMA FACIE CASE OF DISCRIMINATION

First, KJMC erroneously argues that Complainant has not stated a *prima facie* case for discrimination.

Title VII makes it illegal to use race, color, sex, religion and national origin as criteria to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). The EEOC has ruled that an employer must maintain a "working environment free of racial intimidation," which also requires an employer to take "positive action where positive action is necessary to redress or eliminate employee intimidation." EEOC Dec. No. 72-0079, 4 FEP 317 (1971). To establish a *prima facie* case of racial discrimination under Title VII, a claimant must show that: "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003). *Cordell v. Verizon Communications, Inc.,* 331 F. App'x. 56, 58 (2d Cir. 2009).

As alleged in the Charge, Ms. John is a black female of Grenadian decent, and is thus a member of a protected class under Title VII. KJMC does not dispute Ms. John's membership in a protected class. Instead, KJMC's merely contests that Ms. John was not qualified for her position; that it did not subject Ms. John to any adverse employment actions; and that the actions

---

[1] The word "susu" also known as "esusu" originates from the West African Yoruba tribe and it means pooling funds. It is commonly used among West Indian immigrants from the West Indies as a savings plan.

2

taken against Ms. John did not occur under circumstances giving rise to an inference of discrimination.

### A. Ms. John Is More Than Qualified For Her Position As Staffing Manager.

Initially, KJMC hired Ms. John in 1996 as a Nursing Assistant at Rutland Nursing Home, which is part of KJMC. Later, in 2002, KJMC promoted Ms. John to the position of Staffing Clerk. In 2008, KJMC posted a Staffing Manager position. KJMC required any applicant for the Staffing Manager position to have obtained a Bachelor's Degree. KJMC required a Bachelor's Degree despite the fact that the previous Staffing Manager did not have a Bachelor's degree *and* worked in the position for over 35 years. *See* "Affidavit of Gemma Moore at ¶ 9," annexed as Exhibit "A." Irrespective of the arbitrary requirement, Ms. John applied and obtained the position. KJMC promoted Ms. John to the position in part due to the glowing recommendation of Ms. John's supervisor Gemma Moore[2] ("Moore"), the Director of Nursing (DNS). *See id.* In addition, Ms. John performed her duties as a Staffing Manager in an exemplary manner which is evidenced by her exemplary performance evaluations from 2008-2009. *See* "Jillian John's 2008 & 2009 performance evaluations," annexed as Exhibit "B." Thus, Complainant has satisfied the second prong of a discrimination claim.

### B. KJMC Subjected Ms. John To Adverse Employment Actions

Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay and reprimand. *Morris v. Lindau*, 196 F.3d 102, 110 (2d. Cir. 1999). Furthermore, lesser actions may also be considered adverse employment actions as a plaintiff need not have suffered dismissal, reduction in pay, or demotion in rank. *Id; see also Bernheim v. Litt*, 79 F.3d 318, 324-26 (2d Cir. 1996).

Here, Ms. John's termination is undeniably an adverse employment action. For instance, KJMC refused to grant Ms. John access to the Kronos program, even though it granted full access to similarly situated employees. *See Morris v. Lindau*, 196 F.3d at 110. Specifically, Kay refused to grant Ms. John more than the "view only" access to the Kronos program even though full access was needed to perform the essential function of her duties. *See* "Jillian John's Affidavit," annexed as Exhibit "C" at ¶¶ 8-9. Kay discriminatorily denied Ms. John access when employees who were in **the same exact position** as Ms. John (a Staffing Clerk at the time) were granted **full access**. Kay granted full access to the Kronos program to the following Staffing Clerks: Victor Joseph (non-Grenadian), Juliet Lowers (non-Grenadian), and even a part-time Staffing Clerk Helen Thomas (non-Grenadian). *See id.* Incredulously, Ms. John, a Grenadian female, who was also a Staffing Clerk at the time, was the *only* staffing personal without access

---

[2] Gemma Moore currently has an EEOC Charge pending against KJMC for violations of Title VII for discrimination based on her race and national origin.

to Kronos. Moreover, when Ms. John was promoted to Staffing Manager, Kay **continued to deny** Ms. John full access to the Kronos program.

Onerously, when Ms. John needed to use the Kronos program to perform her <u>daily</u> obligations as Staffing Manager, KJMC required Ms. John to ask Kay to input the data on her behalf or to request lower level employees such as the aforementioned Staffing Clerks to grant her access. *See* Exhibit "C" at ¶¶ 8-9. Logically, Ms. John, who monitors the attendance of staff employees via the Kronos program required greater than a view-only" access. In essence, the Kronos program was an integral component to Ms. John's work-related duties. *See id.* KJMC's disparate treatment of granting access to the Kronos program unquestionably constitutes an adverse employment action.

### C. KJMC discharge of Ms. John's Based Upon Her Participation In A Susu Savings Account Was Pretext For Unlawful Discrimination, <u>Giving Rise To An Inference Of Discrimination.</u>

KJMC made brazen mis-characterizations with regard to the following: 1) the nature of a susu savings account, 2) Ms. John's job duties, and 3) Ms. John's ultimate replacement as Staffing Manger. These gross mis-characterizations are pretext for Ms. John's wrongful termination, as detailed below.

#### *1. A Susu is a West Indian savings account, which does not violate KJMC's policies.*

A susu is a traditional manner in which Caribbean Americans save money. *See* Exhibit "C" at ¶¶ 10, 12; *see also* Exhibit "A" at ¶ 21. It involves a group of individuals, who pool together a predetermined fixed amount of funds. *See also* Exhibit "A" at ¶ 21. Each participant contributes an equal share. The money is then held by a designee appointed by the group. The designee then distributes the full lump sum to a participant at a predetermined rotation period which could be weekly, bi-weekly or monthly. After the full sum is distributed to one of the participants at their assigned rotation, all the members replenish the susu by re-contributing their share. This process is repeated until all members receive a lump sum at their assigned rotation. *See id.* at ¶ 22. To properly operate a susu, there is no requirement regarding the number of participants. *See id.* at ¶ 24. In addition, participants in a susu do not suffer any pecuniary loss or receive a financial gain. *See* Exhibit "C" at ¶ 12.

KJMC incorrectly argues that Ms. John's participation as a designee in a susu violated KJMC's policy and/or regulations. KJMC cites to its ban on solicitation which is puzzling, because a susu collector merely holds the participants contributions and then distributes them as needed. The number or participants within a susu is irrelevant. *See* Exhibit "C" at ¶¶ 10-12 and Exhibit "A" at ¶¶ 21-24; *see also* Respondent Position Statement pg. 4. Thus, there is no need to

4

solicit participants because a susu can be effective with a small number of people. *See* Exhibit "A" at ¶ 24. Again, a susu is merely a traditional savings account in West Indian culture and typical formed when the participants need assistance in reaching their financial goals. *See id.* at ¶ 21-22.

KJMC also incorrectly argues that Ms. John used her position for personal gain and inappropriately exerted influence over lower level employees by providing more overtime shifts to participants in her susu, which is a conflict of interest according to KJMC's policy and/or regulations. KJMC's contention that participants in Ms. John's susu received more overtime shifts is laughable, when there is **no pecuniary gain from a susu**. *See* Respondent Position Statement pgs. 4-5; *see also* Exhibit "C" at ¶ 12. In fact, a small susu is plausibly more effective than a large susu because there are fewer participants to manage. Moreover, Ms. John could not conceivably use her position to increase the number of participants in the susu because logically *only* interested parties would voluntarily participate and those un-familiar with a susu would utilize a conventional bank account. Furthermore, the susu did not conflict with Ms. John's job performance since her performance reviews clearly demonstrate that she performed her duties satisfactorily. *See* Exhibit "B." Notably, KJMC failed to provide any documentary evidence of the purported arbitrary allotment of overtime under Ms. John's supervision as Staffing Manager.

Moreover, susus are similar to lottery pools which are conducted on KJMC's premises by many Caucasian employees, including managerial employees such as Mary Ann Rose ("Rose"), the Vice President of Long-Term Care. *See* Exhibit "A" at ¶¶ 25-27. Similarly, the number of people who join a lottery pool is not necessarily important and thus solicitation is not required. However, a *significant* difference between a susu and a lottery pool is that none of the susu participants suffers any pecuniary loss. *See id.* at ¶ 25. Notably, KJMC's termination of Ms. John based on her participation in susu evinces its prejudice towards Ms. John's national origin, because none of the Caucasian employees at KJMC have been penalized for their participation in the lottery pool, while Ms. John and Ms. Janet Hunt, African American female of Caribbean decent, were terminated for participating in their traditional custom.

Thus, since a susu does not require solicitation, it did not create a conflict of interest, and did not interfere with Ms. John's work performance, KJMC's argument that Ms. John violated KJMC's policy inevitably fails.

### *2. Ms. John's position did not permit her to arbitrarily assign overtime shifts.*

KJMC flagrantly mischaracterized Ms. John's job position and the influence she had as a Staffing Manager. Ms. John's duties entailed: 1) ensuring that there was an adequate number of nursing staff on duty on all shifts; 2) ensuring the scheduling for nurses was timely completed; 3) monitoring KJMC employee's time and attendance; and 4) daily entering data for the preparation

of payroll processing. *See* "Jillian John's Resume," annexed as Exhibit "D."   KJMC incorrectly argued that Ms. John prepared the schedules of all staff members, when, in fact, nursing supervisors are responsible for the preparation of schedules. Furthermore, Ms. John's could not allot overtime shifts more favorably to susu participants. *See* Exhibit "C" at ¶¶ 6-7.  All KJMC employees are required to have overtime requests approved by the DNS (Moore) and the ADNS (Kathleen John) *before* being submitted to Ms. John. *See id.*; *see also* Exhibit "A" at ¶ 19; *see also* "KJMC Memorandum pertaining to overtime rules," annexed as Exhibit "E." Thus, Ms. John was incapable of assigning overtime in an arbitrary manner.

### 3.  *KJMC replaced Ms. John with Ms. Christine Kay, a Caucasian female.*

KJMC also flagrantly mischaracterized Ms. John's replacement at KJMC.  KJMC contends that it replaced Ms. John with Allison Richard ("Richard"), an African American male of Caribbean descent. *See* Respondent Position Statement pg. 10. KJMC's argument is blatantly false.  Even though Richard was also a Staffing Manager at KJMC, his shift assignment was entirely different than that of Ms. John.  Richard only temporarily assumed Ms. John's responsibilities when KJMC constructively terminated her on August 3, 2009.  *See* "Letter to McKeon dated August 3, 2009," annexed as Exhibit "F."

KJMC erroneously contends that it discharged Ms. John on September 11, 2009, and that Kay had no involvement in Ms. John's termination.  However, KJMC constructively discharged Ms. John prior to September 11, 2009, when Kay reassigned Ms. John's hours to Richard **for the week** of August 3, 2009.  KJMC's reassigned Ms. John's hours prior to any investigatory proceeding. *See* Exhibit "F."   Furthermore, Kay's involvement in Ms. John's replacement was out of the scope of Kay's duties, because Ms. John's supervisor was Ms. Moore and *not* Kay. *See id.*

Notably, the aforementioned duties of the Staffing Manager are currently being conducted by Kay, even though she does not have the Staffing Manager title. *See* Exhibit at "A" ¶ 12.   In addition, Richard is currently the Associate Coordinator and must report to Kay, as opposed to the DNS. *See* "Organizational chart of KJMC," annexed as Exhibit "G."  When Ms. John was the Staffing Manager at KJMC, she reported to Ms. Moore, the DNS at the time, not Kay.  Kay's acquisition of Ms. John's responsibilities and position evidences the lack of validity in KJMC's argument that Ms. John's replacement was an African American male of Caribbean descent.  Thus, KJMC's reason for discharging Ms. John is merely pretextual.

Thus, Complainant sufficiently established that her adverse employment actions gave rise to an inference of discrimination.

6

## II.   KJMC SUBJECTED MS. JOHN TO A SEVERE OR PERVASIVE HOSTILE-WORK ENVIRONMENT

In order to prevail on a hostile work environment theory, a complainant must prove, *inter alia*, that the alleged harassment was: (1) severe or pervasive; (2) altered conditions of employment; and (3) was unwelcome. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 69 (1986) (citing EEOC Guidelines, 29 C.F.R. §1604.11(b)). The standard for severe or pervasive is met when the victim subjectively perceives the environment to be abusive, and when a reasonable person would objectively perceive the environment to be permeated with intimidation. *Id.*

KJMC subjected Ms. John to a hostile work environment, by the mere fact that Kay denied Ms. John access to the Kronos system for **two years**. As Staffing Manager, Ms. John was required to report to Moore and **not** Kay, yet KJMC required Ms. John to utilize Kay or Staffing Clerks, who held a lower position than Ms. John, to obtain access to the Kronos program in order to perform her job efficiently. *See* Exhibit "C" at ¶¶ 8-9. KJMC has ostracized Ms. John for two years by segregating her from the tools needed so that she could perform the essential functions of her position. This alone, demonstrates that KJMC subjected Ms. John to a hostile work environment. Thus, Complainant satisfied the elements required to show a hostile work environment.

## III.   KJMC SUBJECTED MS. JOHN TO ADVERSE EMPLOYMENT ACTIONS FOR ENGAGING IN PROTECTED ACTIVITY.

To establish a prima facie case of retaliation, a complainant must show: (1) that he engaged in protected activity; (2) that the defendant was aware of that activity; (3) that he suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action. *See Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 519 (S.D.N.Y. 2010) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995)). All that is required to engage in protected activity to sustain a retaliation claim is the lodging of a good faith complaint of discrimination. *Hubbard v. Total Communications, Inc.*, 347 F. App'x. 679, 681 (2d Cir. 2009) (A plaintiff in a retaliation case need not prove that the conditions she protested amounted to an actual Title VII violation; she need only establish that she had a good faith, reasonable belief that a violation occurred). Further, "the causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Feingold v. New York*, 366 F.3d 138, 156-57 (2d Cir. 2004) (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir.2001)). To demonstrate an adverse employment action, a complainant must show that the adverse action might dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. and Santa Fe Ry Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006).

### A. KJMC Knew Ms. John Engaged In Protected Activity By Opposing Its Discriminatory Conduct

KJMC incorrectly argues that Ms. John did not engage in any protected activity. KJMC's argument is quite perplexing when the Charge provides *numerous* examples. For instance, on November 2, 2007, the KJMC staffing personnel such as Ms. John, participated in a training class for Kronos. Ms. John complained to KJMC's of discrimination when Ms. John realized she was the only participant in the class with a "view only" access. On or about November 5, 2007, Ms. John also explicitly complained to Human Resource Representative, Earnest Liggins, an African-American. *See* "Email Correspondence to Earnest Liggins," annexed as Exhibit "H." In the email, Ms. John explicitly stated that "[the] act of segregation made me feel very humiliated degraded and even discriminated against." *See id.* Ms. John's opposition to KJMC's discriminatory conduct could not be clearer.

Additionally, on or about November 7, 2007, Ms. John engaged <u>again</u> in protective activity by filing a complaint with her union delegate, Juliet Samuda ("Samuda"). On that same date, Samuda and Ms. John went to speak with John McKeon ("McKeon"), Vice President of Human Resources. Ms. John also addressed her concerns with her supervisor, Moore. Clearly, Ms. John made a <u>substantial</u> effort to oppose KJMC's discriminatory conduct, and KJMC unequivocally was aware of her complaints because she brought it to the attention of her supervisor, union, and human resource department. Based on the aforementioned examples, KJMC clearly knew that Ms. John engaged in protected activity.

### B. KJMC Retaliated Against Ms. John Immediately After Her Engagement In Protected Activity

One (1) month after Ms. John's opposition to KJMC's discriminatory conduct in the Kronos program, KJMC started to retaliate against her. The adverse actions taken against Ms. John would reasonably dissuade an employee from engaging in protected activity. Specifically, in or around December 2007, Rose who normally granted Ms. John a cash Christmas bonus gave Ms. John stationery instead. Additionally, in the beginning of 2008, shortly after Ms. John assumed the role as a substitute Staffing Manager (when Staffing Manager, Valerie Bryant was ill), KJMC added an additional requirement of a Bachelor's Degree to the Staffing Manager position, knowing fully well that Ms. John did not hold a Bachelor's Degree. This added qualification was required even though Valerie Bryant served as Staffing Manager for over 35 years without ever holding a Bachelor's Degree. *See* Exhibit "A" at ¶ 9. This duplicitous requirement even alarmed Moore, who swiftly contacted Rose to express the unfairness of a superfluous degree requirement. *See* Exhibit "A" at ¶ 9. Furthermore, Moore also expressed her concerns to McKeon. *See id.* at ¶ 10.

8

Additionally, from the moment Ms. John complained until her discharge, Kay would frequently scrutinize Ms. John's payroll entry and unnecessarily brought staffing issues to Rose and Moore's attention. Even though Kay was not Ms. John's supervisor and on average Ms. John would incur 10 errors in a payroll of over 400 employees. Notably, in October 2008, Ms. John again complained to McKeon about KJMC's discriminatory practice and its failure to grant her access to the Kronos program. *See* "Letter to McKeon dated October 2, 2008" annexed as "Exhibit I." Due to Ms. John's October 2008 complaint, KJMC continued its regular and unbroken chain of retaliatory conduct in the form of increased and unwarranted scrutiny and restricted access to the Kronos program. The temporal proximity between the aforementioned complaints and KJMC's discriminatory conduct, demonstrate that the KJMC's actions were retaliatory, because of the close proximity between Ms. John's complaints and KJMC's adverse actions which ultimately led to Ms. John's unlawful discharge. Thus, a causal connection exists between Mrs. John's opposition and the aforementioned adverse employment actions.

For all of the above reasons, Complainant has sufficiently satisfied all of the required elements of a retaliation claim.

## IV.   MS. JOHN'S DISCRIMINATION CLAIMS ARE NOT TIME-BARRED

KJMC erroneously argues that Complainant's race and/or national origin discrimination claims should be dismissed because many of the dates of the discriminatory acts fell outside of the 300 day statute of limitations period for the filing of an EEOC charge.

The discrimination charge in this case was filed on September 24, 2009. The statute of limitations for filing an EEOC charge is 300 days. U.S.C.S. § 2000e-5(e). Typically, any of KJMC's discriminatory actions that occurred prior to November 28, 2008, would be considered untimely. However, under the continuing violation doctrine, "the commencement of the statute of limitations period is tolled until the last discriminatory act in furtherance of the discriminatory policy or practice occurs." *Salgado v. City of New York*, 2001 U.S. Dist. LEXIS 3196, *14 (S.D.N.Y. March 26, 2001).

Complainant's charge alleges several specific and related instances of discrimination from 2007 to 2009. In *Bloom v. New York Bd. Of Educ.*, 2003 U.S. Dist. LEXIS 5290, *22 (S.D.N.Y. 2003), the Southern District of New York held that the continuing violation doctrine will save untimely claims if a plaintiff can allege "specific and related instances of discrimination . . . [that have been] permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Similarly, here, KJMC continuously denied Ms. John the use of the Kronos program *until* her discharge, while lower level employees obtained full access. *See* Exhibit "C" at ¶ 8. KJMC also subjected Ms. John to increased scrutiny beginning from the date of her initial complaint on November 2007, until her constructive

discharge in August 2009. Thus, all of Ms. John's claims regarding KJMC's discriminatory conduct are _timely_ because the claims are all connected pursuant to the same scheme in furtherance of KJMC's discriminatory and/or retaliatory policy or practice, which went un-remedied.

For all of those reasons, Complainant's discrimination claims are not time-barred and KJMC's final argument fails.

## CONCLUSION

For all of the foregoing reasons , Complainant respectfully requests that a probable cause finding be issued, or that in the alternative, due to Ms. John's inability to conduct discovery in these proceedings, that this Agency conduct further discovery into Complainant's allegations as set forth above and in the Charge.

Very truly yours,

Michael J. Borrelli, Esq.

10

# Exhibit "A"

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
-----------------------------------------------------------X
GEMMA MOORE,                                      :
                                                  :
                          Complainant,            :
                                                  :
           -against-                              :        **AFFIDAVIT OF**
                                                  :        **GEMMA MOORE**
KINGSBROOK JEWISH MEDICAL                          :
CENTER                                            :        520-2009-04093
                                                  :
                          Respondent.             :
-----------------------------------------------------------X


STATE OF NEW YORK     )        ss:
COUNTY OF NASSAU      )

   **GEMMA MOORE, under the penalty of perjury deposes and says:**

1. I worked at the Kingsbrook Jewish Medical Center ("KJMC") as the Director of Nursing Services for Rutland Nursing Home from on or about February 13, 2003 until December 31, 2009.

2. I have personal knowledge of the matters contained in this affidavit, and, if called upon, I could and would testify to each of the statements made herein.

3. I am submitting this Affidavit in connection with the above Charge of Discrimination ("Charge") against Respondent, KJMC to address KJMC's mischaracterizations of facts.

4. I have thoroughly reviewed all of the information contained in the above Charge and believe it to be accurate.

5. Specifically, I believe that KJMC terminated Ms. John as a form of discrimination based on Ms. John's African American race and Grenadian national origin.

6. I believe that the stated reasons provided by KJMC for the termination of Ms. John were merely pretextual, and were only designed to hide KJMC's true illegal discriminatory motives.

7. I have also thoroughly read the position statement submitted by the KJMC, as well as all of the documentary evidence attached by the KJMC's to its position statement.

8. I have known, Ms. Jillian John (Ms. John"), the named Complainant in the above-captioned Charge of Discrimination currently pending before the Equal Employment Opportunity Commission, since 2003 from working at KJMC.

9. In 2008, when the Staffing Manager position was posted, it listed a Bachelor's Degree as a requirement. I sent an e-mail to Mary Ann Rose ("Ms. Rose"), the Vice President of Long-Term Care at KJMC and John McKeon ("Mr. McKeon"), the Vice President of Human Resources stating the unfairness of a Bachelor's Degree requirement, when the previous Staffing Manager did not have a Bachelor's Degree and performed the job efficiently for over 35 years.

10. I also personally went to Mr. McKeon to advocate for Ms. Jillian John to get the Staffing Manager position because Ms. John had face opposition from Ms. Rose in her obtainment of the position.

11. I believe that Ms. Rose and Ms. Christine Kay (Ms. Kay), Director of Long-Term Care Resources, have a very close personal relationship and Ms. Kay seems to have a lot of influence over Ms. Rose.

12. Currently, Ms. Kay is performing all of the tasks under the Staff Manager position, and she does not have a Bachelor's Degree.

13. Mr. Allison Richards ("Mr. Richards") is currently an Assistant to Ms. Kay, and he did not replace Ms. John. Specifically, he works as a Staffing Associate with Ms. Kay as his supervisor, and he was never given the Staffing Manager position.

14. Further, Ms. John did not handle all "staffing" matters for the nursing personnel. Specifically, agency employees (non-staff employees) would first give their availability to the KJMC's ATM (At the Moment) department, who in turn give the schedules to the staffing personnel.

15. As for the staff employees (full time and part time), the nursing supervisors would prepare the work-schedules.

16. The daily assignments were given by the charge nurse or supervisors on the unit level.

17. The records of sick calls and lateness were kept by Ms. Kay who in turn sent a report to the Director of Nursing (DNS), formerly me or my assistant Kathleen John, the Associate Director of Nursing (ADNS).

18. As for vacation and holiday requests, these requests were approved or denied by the various nursing supervisors, DNS or ADNS.

19. The Respondent has mischaracterized Ms. John's duties in their position statement because all overtime had to be approved by me as the DNS or the ADNS.

20. Ms. John upheld the policies of KJMC. For instance, Ms. John reported on Ms. Denise Bonny, a certified nurse assistant who tried to bribe her for favors. Ms. Bonny received a verbal warning for her actions from both the ADNS and DNS.

21. A susu is a traditional way of savings by Caribbean Americans.   It involves a pool of individuals, who pool together a certain amount of money.  The money is then kept by one individual and each person is paid out every rotation (weekly, bi-weekly or monthly).

22. Everyone gets back exactly what they have contributed. This type of saving helps people who are unable to get a loan from a bank and also allows an individual to get a lump sum of money without paying a lot of interest to a bank.

23. No one gains from a susu transaction, and the activity is not illegal.

24. The number of people within the susu is not relevant.

25. Susu is comparably to a lotto pool, except everyone receives the money they contributed in the end.

26. At KJMC, lotto pools are frequently conducted and Ms. Rose, a managerial level employee, actively participated in this activity money administrative staff purchase lottery tickets.

27. Many Caucasian employees participate in the lotto pools.

Dated: March 22, 2011
      Carle Place, NY

3

GEMMA MOORE

Notary Public

Sworn to and subscribed before me this _22^ND_ day of March 2011.

Stephanos Zannikos
Notary Public, State of New York
ID #: 02ZA6197408
Qualified in Nassau County
My Commission Expires: 12/01/20_12_

4

# Exhibit "B"

# KINGSBROOK JEWISH MEDICAL CENTER
## EMPLOYEE COMPETENCY BASED POSITION DESCRIPTION
### PERFORMANCE EVALUATION & IMPROVEMENT

**Position Title: Staffing Clerk, Nursing**                                 JobCode   **5104**

**Employee Name:** _Jillian John_   Date of Review: _4/23/07_   Date of Hire: _3/25/96_

Type of Review and Date of Next Review:  (Place a check for the appropriate type of review and determine the due date for the next review)

| | | | |
|---|---|---|---|
| ___ Probation | ✓ Annual | _2008_ | Next Review Date |
| | ___ Remediation (No more than 90 Days) | ___ | Next Review Date |
| | ___ Other | ___ | Next Review Date |

## Position Summary:

Prepares staffing schedules. Performs varied clerical office functions.

## Qualifications:

**A. Education:**   High school diploma or equivalent

**B. Experience:**   One (1) year experience in staffing

**C. Certification:** None-required

**D. Physical Requirements:**   Must be able to perform all job functions.

Instructions:
1. Complete all sections of the evaluation with appropriate and applicable marks and/or comments.
2. Based on competency assessment, evaluate the individual by at least one of the evaluation methods documented in the legend.
3. Determine if the individual meets the standard or does not meet the standard and document which method of evaluation was used to make the determination.
   - You must select "Meets standard" OR "Needs remediation" for each item.
   - The definition of competence is the application of knowledge and the interpersonal, decision-making, and psychomotor skills expected for the practice role.
   - An employee will be judged to have met the standard if he/she capably and consistently produces work results that meet all performance standards and job requirements of the position.
   - Refer to letter key below to indicate methods of evaluation used (D, O, W, or V).  Enter (X) in appropriate column.
4. When an individual needs remediation, a plan of action with clear measurable goals must be delineated at the end of the form.
5. Ensure staff and all evaluators have signed the form and submit it to human resource department.

EVALUATION METHOD LEGEND
D = SKILLS DEMONSTRATION   O = PERFORMANCE OBSERVATION   W = WRITTEN TEST   V = VERBAL TEST

Revision Date: _____

COPY SENT TO HUMAN RESOURCES ON
_4/26/07_

**POSITION DESCRIPTION**
**PERFORMANCE EVALUATION & IMPROVEMENT PLAN**

Position Title:  Staffing Clerk, Nursing          Job Code: 5104

**COMPETENCY VALIDATION AND PERFORMANCE EVALUATION**

| PERFORMANCE CRITERIA | MEETS STANDARD | NEEDS REMEDIATION | METHOD OF EVALUATION | | |
|---|:---:|:---:|:---:|:---:|:---:|
| **CORE COMPETENCIES (non-management)** | | | | | |
| **MISSION** | | | | | |
| Articulates clear understanding & demonstrates commitment to the organization's mission, vision, values & goals | ✓ | | ✓ | | |
| Behaves ethically, with integrity, honesty, privacy & confidentiality | ✓ | | ✓ | | |
| Utilizes resources efficiently & effectively | ✓ | | ✓ | | |
| Participates in performance improvement activities | ✓ | | ✓ | | |
| Complies with all policies and procedures | ✓ | | ✓ | | |
| Complies with all regulatory agencies, including state, federal and JCAHO | ✓ | | ✓ | | |
| Demonstrates knowledge, respect and sensitivity of resident rights, privacy, confidentiality, and safety | ✓ | | ✓ | | |
| Attends and participates in meetings as required or suggested by supervisor | ✓ | | ✓ | | |
| **COMMUNICATION - INTERPERSONAL** | | | | | |
| Uses a variety of verbal and non-verbal methods to make sure that messages & information are completely & easily understood | ✓ | | ✓ | | |
| Follows up with the patient/customer to make sure they understand the information given | ✓ | | ✓ | | |
| Protects the confidentiality of patient/customer information & the exclusive information of KJMC | ✓ | | ✓ | | |
| Takes the time to listen to patients, customers & fellow employees to understand and meet their needs | ✓ | | ✓ | | |
| Expresses concerns & issues without anger or defensiveness | ✓ | | ✓ | | |
| Provides feedback to others, at the right time and place, in a helpful and calm manner | ✓ | | ✓ | | |
| Identifies key people who need to be kept informed about a situation & provides them with the information they need | ✓ | | ✓ | | |
| Speaks about KJMC in a positive manner & tells others about the high level of professionalism & quality care provided by KJMC | ✓ | | ✓ | | |
| **CUSTOMER SERVICE** | | | | | |
| Seeks to understand patients' and customers' feelings & then responds by demonstrating compassion when addressing those feelings | ✓ | | ✓ | | |
| Acts as a positive & calming influence in stressful situations | ✓ | | ✓ | | |
| Takes time to ensure that patients & customers understand how to get things done | ✓ | | ✓ | | |
| Goes out of the way to ensure that patient/customer satisfaction in a timely, effective manner & follows-up with them when appropriate. | ✓ | | ✓ | | |
| Demonstrates patient/customer focus above & beyond what is expected, knowing that everything one does impacts the quality of patient/customer care & the success of our organization | ✓ | | ✓ | | |
| Maintains a positive manner toward patients & customers & acts as a role model in encouraging others to do the same | ✓ | | ✓ | | |
| When appropriate provide feedback to their manager or others about important issues that affect the quality of patient care or customer satisfaction | ✓ | | ✓ | | |
| Provides patients/customers with "bias-free" care & treats them with respect regardless of the reason that they are in the hospital or the frequency of visits (i.e. drugs, teenage pregnancy) | ✓ | | ✓ | | |
| Provides the highest quality service possible to every patient/customer at KJMC | ✓ | | ✓ | | |

D = SKILLS DEMONSTRATION     O = PERFORMANCE OBSERVATION     W = WRITTEN TEST     V = VERBAL TEST

1

**POSITION DESCRIPTION**
**PERFORMANCE EVALUATION & IMPROVEMENT PLAN**

Position Title: **Staffing Clerk, Nursing**                                        Job Code: **5104**

**COMPETENCY VALIDATION AND PERFORMANCE EVALUATION**

| PERFORMANCE CRITERIA | MEETS STANDARD | NEEDS REMEDIATION | METHOD OF EVALUATION | | | |
|---|---|---|---|---|---|---|
| **DECISION MAKING** | | | | | | |
| Determines the best course of action quickly when in a difficult or crisis situation, but also knows when to ask manager for help | ✓ | | ✓ | | | |
| Demonstrates excellent problem-solving skills to determine the best possible solution | ✓ | | ✓ | | | |
| Makes decisions even if there is limited information & time | ✓ | | ✓ | | | |
| Draws on past experiences & training to make good decisions | ✓ | | ✓ | | | |
| Effectively prioritizes different tasks & meets multiple deadlines without a decrease in quality or service | ✓ | | ✓ | | | |
| Takes initiative and involves others in seeking the information necessary to make good decisions | ✓ | | ✓ | | | |
| Communicates to all key people following a decision to be sure that high-quality patient/customer care is given | ✓ | | ✓ | | | |
| Makes decisions with the understanding that the work done can impact others throughout KJMC, not only one's own team | ✓ | | ✓ | | | |
| **RESPECT FOR OTHERS** | | | | | | |
| Displays sensitivity to patients, customers, & fellow employees regardless of cultural background, race, gender, sexual orientation or religious belief | ✓ | | ✓ | | | |
| Demonstrates a respect for others by taking peoples' opinions, perspectives, feelings & needs into account | ✓ | | ✓ | | | |
| Shows an understanding of how one's own behavior impacts others | ✓ | | ✓ | | | |
| Asks patients, customers & fellow employees how they wish to be addressed & follows through, politely corrects or provides feedback to fellow employees who do not do this | ✓ | | ✓ | | | |
| Protects the confidentiality & privacy of others & encourages others to do the same | ✓ | | ✓ | | | |
| Speaks positively about other individuals & KJMC & offers constructive criticism through the appropriate channels of the health system | ✓ | | ✓ | | | |
| Demonstrates a respect for others by being on time for meetings & completing work requests within deadlines | ✓ | | ✓ | | | |
| **TEAMWORK** | | | | | | |
| Demonstrates flexibility about changing one's own priorities as needed by the department & organization, without risking quality outcomes or deadlines | ✓ | | ✓ | | | |
| Involves others in one's own & other departments on projects, & when delivering quality patient/customer care | ✓ | | ✓ | | | |
| Shares information & acknowledge that it will help others | ✓ | | ✓ | | | |
| Learns from & uses the knowledge & experience of others to achieve department & KJMC goals | ✓ | | ✓ | | | |
| Contributes not only to one's own team, but to others in the organization in order to better serve the needs of patients & customers | ✓ | | ✓ | | | |
| Praises teammates for good work & looks for ways to learn from mistakes rather than blaming others | ✓ | | ✓ | | | |
| Supports team decisions & meets team commitments | ✓ | | ✓ | | | |
| **ACCOUNTABILITY/RESULTS ORIENTATION** | | | | | | |
| Demonstrates a strong drive to achieve results, doing whatever it takes within one's role to support KJMC & service line, as well as department objectives | ✓ | | ✓ | | | |
| Plans & organizes one's own work so that results can be achieved | ✓ | | ✓ | | | |

D = SKILLS DEMONSTRATION      O = PERFORMANCE OBSERVATION      W = WRITTEN TEST      V = VERBAL TEST

POSITION DESCRIPTION
PER   .RMANCE EVALUATION & IMPROVEMEN   PLAN

**Position Title:  Staffing Clerk, Nursing**                    **Job Code: 5104**

COMPETENCY VALIDATION AND PERFORMANCE EVALUATION

| PERFORMANCE CRITERIA | MEETS STANDARD | NEEDS REMEDIATION | METHOD OF EVALUATION | | | |
|---|---|---|---|---|---|---|
| **ACCOUNTABILITY/RESULST ORIENTATION (Cont'd)** | | | | | | |
| Takes ownership & accepts responsibility for both positive & negative results from the beginning and does not blame others or the situation foor poor results or mistakes | ✓ | | ✓ | | | |
| Supports management decisions that have been made | ✓ | | ✓ | | | |
| Follows up to ensure work has been completed & expected results have been achieved, even if it requires going above & beyond what is expected of one's job | ✓ | | ✓ | | | |
| Demonstrates a high level of attention to detail in all aspects of work, including work done under stressful conditions | ✓ | | ✓ | | | |
| Consistently meets &/or surpasses deadlines & supports others to do the same | ✓ | | ✓ | | | |
| Strives to provide the highest possible quality work to achieve results that benefit KJMC | ✓ | | ✓ | | | |
| **PERSONAL & PROFESSIONAL PERFORMANCE INPROVEMENT** | | | | | | |
| Maintains personal health status requirements in relation to job position | ✓ | | ✓ | | | |
| Maintains professional license certification | ✓ | | ✓ | | | |
| Adheres to infection control and safety policies, including education, reporting, and practice implementation specific to job. Attends all in-service education required of the position & by the organization | ✓ | | ✓ | | | |
| Maintains current personnel file information and provides information in a timely manner | ✓ | | ✓ | | | |
| Does not abuse or take advantage of sick time or personal days | ✓ | | ✓ | | | |
| Consistently reports to work on time and ready to work at the start of the shift. Always provides proper notification when late or absent. | ✓ | | ✓ | | | |
| Dresses according to appropriate workplace standards | ✓ | | ✓ | | | |
| Seeks to educate & improve self or others to raise performance levels &/or quality of care | ✓ | | ✓ | | | |
| Identifies obstacles to effective and efficient performance; first attempts to solve them & refers to manager when necessary | ✓ | | ✓ | | | |
| Looks for ways to do the best possible job so that the highest level of quality service can be given to patients, customers & fellow employees | ✓ | | ✓ | | | |
| Views mistakes or errors as opportunities for learning and improvement & uses the information to help make process improvements without blaming, criticizing or judging others | ✓ | | ✓ | | | |
| Supports & contributes to on-going performance improvement criteria | ✓ | | ✓ | | | |
| Improves work and efficiency to meet deadlines without any decrease in quality or service level | ✓ | | ✓ | | | |
| **JOB SPECIFIC COMPETENCIES** | | | | | | |
| Demonstrates the knowledge & skills necessary to provide care & services appropriate to any age related need to the patients or residents served on the assigned unit, where applicable | ✓ | | ✓ | | | |
| Types Memos, Reports, Correspondence, And Other General Office Information | ✓ | | ✓ | | | |

D = SKILLS DEMONSTRATION     O = PERFORMANCE OBSERVATION     W = WRITTEN TEST     V = VERBAL TEST

**POSITION DESCRIPTION**
**PERFORMANCE EVALUATION & IMPROVEMENT PLAN**

Position Title:  **Staffing Clerk, Nursing**                              Job Code:  **5104**

| PERFORMANCE CRITERIA | MEETS STANDARD | NEEDS REMEDIATION | METHOD OF EVALUATION | | | |
|---|---|---|---|---|---|---|
| **JOB SPECIFIC COMPETENCIES  (Cont'd)** | | | | | | |
| Performs A Variety Of Moderately Complex Clerical Tasks | ✓ | | ✓ | | | |
| Prepares Job Schedule And Types In Prescribed Format | ✓ | | ✓ | | | |
| Distributes Schedule To Departments | ✓ | | ✓ | | | |
| Makes Phone Calls As Advised To Obtain Additional Staff | ✓ | | ✓ | | | |

**POSITION DESCRIPTION**
**PERFORMANCE EVALUATION & IMPROVEMENT PLAN**

**Position Title: Staffing Clerk, Nursing**                                      **JobCode  5104**

**COMPETENCY VALIDATION AND PERFORMANCE EVALUATION**

Name: _Jillian  John_                          UNIT: _ADn_

If the individual's performance of any job specific competency is deemed to need remediation, in order for employee to continue in this position, a plan of professional development with corrective action for improvement is required within 90 days.  Immediate reassignment may be indicated based on specific circumstances.

REMEDIATION ACTION PLAN: (INCLUDE GOALS, MEASURABLE CRITERIA, AND TARGET DATE)

_____

_____

_____

_____

_____

**"I have received and read the above evaluation and remediation plan, if indicated."**

EMPLOYEE SIGNATURE: _Jillian John_   DATE REVIEWED · _4/24/07_

<u>COMMENTS (if any) :</u>
Attach a seperate page if necessary.



_____

NAME/TITLE OF EVALUATORS (S): _Gemma Mooren_

SIGNATURE : _Moren_   DATE : _4/24/07_

SIGNATURE : _____   DATE : _____

<u>COMMENTS (if any) :</u>
Attach a seperate page if necessary.



D = SKILLS DEMONSTRATION     O = PERFORMANCE OBSERVATION     W = WRITTEN TEST     V = VERBAL TEST

**KINGSBROOK**
JEWISH MEDICAL CENTER

**New Employee Initial Competency**
(Non-nursing)

**Position Title: Staffing Clerk, Nursing**      **Job Code: 5104**

Employee Name:

Title:                             Date:

You must be supervised until you are determined to be competent to perform your job function without direct supervision.  In any event, a supervisor must complete this form within (30) days of your initial hire date.  Any employee who has not have a completed competency within the above referenced (30) days will be removed from active status from Human Resources.

Method of Evaluation:    [D] = Skills Demonstration        [O] = Performance Observation
                          [W] = Written Test                [V] = Verbal Test

| PERFORMANCE CRITERIA | MEETS STANDARD | REMEDIATION INSTITUTED | METHOD OF EVALUATION | | | |
|---|---|---|---|---|---|---|
| **JOB SPECIFIC COMPETENCIES** | | | | | | |
| Demonstrates the knowledge & skills necessary to provide care & services appropriate to any age related need to the patients or residents served on the assigned unit, where applicable | ✓ | | ✓ | | | |
| Types Memos, Reports, Correspondence, And Other General Office Information | ✓ | | ✓ | | | |
| Performs A Variety Of Moderately Complex Clerical Tasks | ✓ | | ✓ | | | |
| Prepares Job Schedule And Types In Prescribed Format | ✓ | | ✓ | | | |
| Distributes Schedule To Departments | ✓ | | ✓ | | | |
| Makes Phone Calls As Advised To Obtain Additional Staff | ✓ | | ✓ | | | |

SUPERVISOR SIGNATURE: _Gloria_____

SUPERVISOR SIGNATURE: _____

PRINT NAME: _Gloria Moorewood_____

COMPLETION DATE: _4/23/07_____

_Tiffani Bden   4/23/07. clerk._

## KINGSBROOK JEWISH MEDICAL CENTER
## EMPLOYEE COMPETENCY BASED POSITION DESCRIPTION
### PERFORMANCE EVALUATION & IMPROVEMENT

Position Title: **Staffing/Payroll Manager**                                           JobCode

Employee Name: __John, Jillian__   Date of Review: __8/4/08__   Date of Hire: __3/26/96__

Type of Review and Date of Next Review:  (Place a check for the appropriate type of review and determine the due date for the next review)

| | | | |
|---|---|---|---|
| _____ | Annual | __2009__ | Next Review Date |
| _____ | Remediation (No more than 90 Days) | _____ | Next Review Date |
| ✓ | Other Probationary | _____ | Next Review Date |

### Position Summary:

Responsible for scheduling personnel time and movement within the Nursing Department. Evaluates and finalizes time schedules and changes and analyzes needs for adequate staffing. Advises supervisors regarding employee absenteeism and lateness. Keeps record and submits report activities. Also functions as a back up person to Assistant Director of Nursing.

### Qualifications:

A. Education:   Bachelor's Degree

B. Experience:   Two (2) years experience

C. Certification:  None-required

D. Physical Requirements:   Must be able to perform all job functions.

Instructions:

1. Complete all sections of the evaluation with appropriate and applicable marks and/or comments.
2. Based on competency assessment, evaluate the individual by at least one of the evaluation methods documented in the legend.
3. Determine if the individual meets the standard or does not meet the standard and document which method of evaluation was used to make the determination.
   - You must select "Meets standard" OR "Needs remediation" for each item.
   - The definition of competence is the application of knowledge and the interpersonal, decision-making, and psychomotor skills expected for the practice role.
   - An employee will be judged to have met the standard if he/she capably and consistently produces work results that meet all performance standards and job requirements of the position.
   - Refer to letter key below to indicate methods of evaluation used (D, O, W, or V). Enter (X) in appropriate column.
4. When an individual needs remediation, a plan of action with clear measurable goals must be delineated at the **end of the form.**
5. Ensure staff and all evaluators have signed the form and submit it to human resource department.

EVALUATION METHOD LEGEND

D = SKILLS DEMONSTRATION    O = PERFORMANCE OBSERVATION    W = WRITTEN TEST    V = VERBAL TEST

Revision Date:

**POSITION DESCRIPTION**
**PERFORMANCE EVALUATION & IMPROVEMENT PLAN**

Position Title:  **Staffing/Payroll Manager**                                    **Job Code:**

**COMPETENCY VALIDATION AND PERFORMANCE EVALUATION**

| PERFORMANCE CRITERIA | MEETS STANDARD | NEEDS REMEDIATION | METHOD OF EVALUATION | | | |
|---|---|---|---|---|---|---|
| **CORE COMPETENCIES (Management)** | | | | | | |
| **MISSION** | | | | | | |
| Articulates clear understanding & demonstrates commitment to the organization's mission, vision, values & goals | ✓ | | | ✓ | ✓ | |
| Behaves ethically, with integrity, honesty, privacy & confidentiality | ✓ | | | ✓ | | |
| Utilizes resources efficiently & effectively | ✓ | | | ✓ | ✓ | |
| Participates in performance improvement activities | ✓ | | | ✓ | | |
| Complies with all policies and procedures | ✓ | | | ✓ | | |
| Complies with all regulatory agencies, including state, federal and JCAHO | ✓ | | | ✓ | | |
| Participates in voluntary efforts in order to give back to the community | ✓ | | | ✓ | | |
| Creates positive and collaborative relationships with regulatory agencies | ✓ | | | ✓ | | |
| Creates an environment of respect & sensitivity of resident rights, privacy, confidentiality and safety | ✓ | | | ✓ | | |
| Attends & participates in meetings as required or suggested by supervisor | ✓ | | | ✓ | | |
| **COMMUNICATION - INTERPERSONAL** | | | | | | |
| Uses a variety of verbal and non-verbal methods to make sure that messages & information are completely & easily understood | ✓ | | | ✓ | ✓ | |
| Follows up with the patient/customer to make sure they understand the information given | ✓ | | | ✓ | | |
| Protects the confidentiality of patient/customer information & the exclusive information of KJMC | ✓ | | | ✓ | | |
| Takes the time to listen to patients, customers & fellow employees to understand and meet their needs | ✓ | | | ✓ | | |
| Expresses concerns & issues without anger or defensiveness | ✓ | | | ✓ | ✓ | |
| Provides feedback to others, at the right time and place, in a helpful and calm manner | ✓ | | | ✓ | | |
| Identifies key people who need to be kept informed about a situation & provides them with the information they need | ✓ | | | ✓ | | |
| Encourages, by example, employees to participate in community service activities including, but not limited to, outreach programs conducted by the medical Center such as Health Fairs | ✓ | | | ✓ | | |
| Speaks about KJMC in a positive manner & tells others about the high level of professionalism & quality care provided by KJMC | ✓ | | | ✓ | | |
| **CUSTOMER SERVICE** | | | | | | |
| Seeks to understand patients' and customers' feelings & then responds by demonstrating compassion when addressing those feelings | ✓ | | | ✓ | | |
| Acts as a positive & calming influence in stressful situations | ✓ | | | ✓ | | |
| Takes time to ensure that patients & customers understand how to get things done | ✓ | | | ✓ | | |
| Goes out of the way to ensure that patient/customer satisfaction in a timely, effective manner & follows-up with them when appropriate. | ✓ | | | ✓ | | |
| Demonstrates patient/customer focus above & beyond what is expected, knowing that everything one does impacts the quality of patient/customer care & the success of our organization | ✓ | | | ✓ | | |
| Maintains a positive manner toward patients & customers & acts as a role model in encouraging others to do the same | ✓ | | | ✓ | | |
| When appropriate provide feedback to their manager or others about important issues that affect the quality of patient care or customer satisfaction | ✓ | | | ✓ | | |
| Provides the highest quality service possible to every patient/customer at KJMC | ✓ | | | ✓ | | |

D = SKILLS DEMONSTRATION    O = PERFORMANCE OBSERVATION    W = WRITTEN TEST    V = VERBAL TEST

**POSITION DESCRIPTION**

**PERFOR...ANCE EVALUATION & IMPROVEMENT PL...N**

**Position Title:** Staffing/Payroll Manager          **Job Code:**

## COMPETENCY VALIDATION AND PERFORMANCE EVALUATION

| PERFORMANCE CRITERIA | MEETS STANDARD | NEEDS REMEDIATION | METHOD OF EVALUATION | | | |
|---|---|---|---|---|---|---|
| **PERSONAL & PROFESSIONAL PERFORMANCE INPROVEMENT** | | | | | | |
| Provides patients/customers with "bias-free" care & treats them with respect regardless of the reason that they are in the hospital or the frequency of visits (i.e. drugs, teenage pregnancy) | ✓ | | ✓ | ✓ | | |
| Maintains personal health status requirements in relation to job position | ✓ | | ✓ | ✓ | | |
| Maintains professional license certification | ✓ | | ✓ | ✓ | | |
| Adheres to infection control and safety policies, including education, reporting, and practice implementation specific to job. Attends all in-service education required of the position & by the organization | ✓ | | ✓ | ✓ | | |
| Maintains current personnel file information and provides information in a timely manner | ✓ | | ✓ | | | |
| Does not abuse or take advantage of sick time or personal days | ✓ | | ✓ | ✓ | | |
| Consistently reports to work on time and ready to work at the start of the shift. Always provides proper notification when late or absent. | ✓ | | ✓ | ✓ | | |
| Dresses according to appropriate workplace standards | ✓ | | ✓ | ✓ | | |
| Seeks to educate & improve self or others to raise performance levels &/or quality of care | ✓ | | ✓ | ✓ | | |
| Identifies obstacles to effective and efficient performance; first attempts to solve them & refers to manager when necessary | ✓ | | ✓ | ✓ | | |
| Looks for ways to do the best possible job so that the highest level of quality service can be given to patients, customers & fellow employees | ✓ | | ✓ | ✓ | | |
| Views mistakes or errors as opportunities for learning and improvement & uses the information to help make process improvements without blaming, criticizing or judging others | ✓ | | ✓ | ✓ | | |
| Supports & contributes to on-going performance improvement criteria | ✓ | | ✓ | ✓ | | |
| Fosters positive relations with community at large | ✓ | | ✓ | ✓ | | |
| Improves work and efficiency to meet deadlines without any decrease in quality or service level | ✓ | | ✓ | ✓ | | |
| **DECISION MAKING** | | | | | | |
| Determines the best course of action quickly when in a difficult or crisis situation, but also knows when to ask manager for help | ✓ | | ✓ | ✓ | | |
| Demonstrates excellent problem-solving skills to determine the best possible solution | ✓ | | ✓ | | | |
| Makes decisions even if there is limited information & time | ✓ | | ✓ | ✓ | | |
| Draws on past experiences & training to make good decisions | ✓ | | ✓ | ✓ | | |
| Effectively prioritizes different tasks & meets multiple deadlines without a decrease in quality or service | ✓ | | ✓ | | | |
| Takes initiative and involves others in seeking the information necessary to make good decisions | ✓ | | ✓ | | | |
| Communicates to all key people following a decision to be sure that high-quality patient/customer care is given | ✓ | | ✓ | | | |
| Makes decisions with the understanding that the work done can impact others throughout KJMC, not only one's own team | ✓ | | ✓ | | | |
| Makes appropriate decisions based on whether the situation requires the priority to be on quality, professional or efficiency | ✓ | | ✓ | | | |
| **RESPECT FOR OTHERS** | | | | | | |
| Displays sensitivity to patients, customers, & fellow employees regardless of cultural background, race, gender, sexual orientation or religious belief | ✓ | | ✓ | ✓ | | |

D = SKILLS DEMONSTRATION     O = PERFORMANCE OBSERVATION     W = WRITTEN TEST     V = VERBAL TEST

2

## POSITION DESCRIPTION
## PERFORMANCE EVALUATION & IMPROVEMENT PLAN

**Position Title:  Staffing/Payroll Manager**                    **Job Code:**

### COMPETENCY VALIDATION AND PERFORMANCE EVALUATION

| PERFORMANCE CRITERIA | MEETS STANDARD | NEEDS REMEDIATION | METHOD OF EVALUATION | | | |
|---|---|---|---|---|---|---|
| **RESPECT FOR OTHERS (Cont'd)** | | | | | | |
| Demonstrates a respect for others by taking peoples' opinions, perspectives, feelings & needs into account | ✓ | | ✓ | | | |
| Shows an understanding of how one's own behavior impacts others | ✓ | | ✓ | | | |
| Asks patients, customers & fellow employees how they wish to be addressed & follows through, politely corrects or provides feedback to fellow employees who do not do this | ✓ | " | ✓ | | | |
| Protects the confidentiality & privacy of others & encourages others to do the same | ✓ | | ✓ | | | |
| Speaks positively about other individuals & KJMC & offers constructive criticism through the appropriate channels of the health system | ✓ | | ✓ | | | |
| Demonstrates a respect for others by being on time for meetings & completing work requests within deadlines | ✓ | | ✓ | | | |
| **TEAMWORK** | | | | | | |
| Demonstrates flexibility about changing one's own priorities as needed by the department & organization, without risking quality outcomes or deadlines | ✓ | | ✓ | | | |
| Involves others in one's own & other departments on projects, & when delivering quality patient/customer care | ✓ | | ✓ | | | |
| Shares information & acknowledge that it will help others | ✓ | | ✓ | | | |
| Learns from & uses the knowledge & experience of others to achieve department & KJMC goals | ✓ | | ✓ | | | |
| Contributes not only to one's own team, but to others in the organization in order to better serve the needs of patients & customers | ✓ | | ✓ | | | |
| Praises teammates for good work & looks for ways to learn from mistakes rather than blaming others | ✓ | | ✓ | | | |
| Supports team decisions & meets team commitments | ✓ | | ✓ | | | |
| **ACCOUNTABILITY/RESULTS ORIENTATION** | | | | | | |
| Demonstrates a strong drive to achieve results, doing whatever it takes within one's role to support KJMC & service line, as well as department objectives | ✓ | | ✓ | | | |
| Plans & organizes one's own work so that results can be achieved | ✓ | | ✓ | | | |
| Takes ownership & accepts responsibility for both positive & negative results from the beginning and does not blame others or the situation for poor results or mistakes | | | ✓ | | | |
| Supports management decisions that have been made | ✓ | | ✓ | | | |
| Follows up to ensure work has been completed & expected results have been achieved, even if it requires going above & beyond what is expected of one's job | ✓ | | ✓ | | | |
| Demonstrates a high level of attention to detail in all aspects of work, including work done under stressful conditions | ✓ | | ✓ | | | |
| Consistently meets &/or surpasses deadlines & supports others to do the same | ✓ | | ✓ | | | |
| Strives to provide the highest possible quality work to achieve results that benefit KJMC | ✓ | | ✓ | | | |
| **LEADERSHIP** | | | | | | |
| Inspires people by providing guidance & is a role model in maximizing one's own or others' performance to consistently deliver a high level of performance | ✓ | | ✓ | | | |
| Develops a culture that recognizes, rewards and appreciates people for achieving Organizational Goals & demonstrating KJMC's values | ✓ | | ✓ | | | |

D = SKILLS DEMONSTRATION     O = PERFORMANCE OBSERVATION     W = WRITTEN TEST     V = VERBAL TEST

3

**POSITION DESCRIPTION**
PERFORMANCE EVALUATION & IMPROVEMENT PLAN

**Position Title:  Staffing/Payroll Manager**                           **Job Code:**

COMPETENCY VALIDATION AND PERFORMANCE EVALUATION

| PERFORMANCE CRITERIA | MEETS STANDARD | NEEDS REMEDIATION | METHOD OF EVALUATION | | | |
|---|---|---|---|---|---|---|
| **LEADERSHIP (Cont'd)** | | | | | | |
| Secures a high level of trust based on the candor & integrity demonstrated | ✓ | | ✓ | ✓ | | |
| Provides service line/department/units with the strategic & operational direction & support needed to be successful | ✓ | | ✓ | ✓ | | |
| Articulates, promotes & gains commitment for KJMC's values & mission | ✓ | | ✓ | ✓ | | |
| Demonstrates both strategic & operational leadership skills | ✓ | | ✓ | ✓ | | |
| Embraces, supports & implements change initiatives | ✓ | | ✓ | ✓ | | |
| **PEOPLE MANAGEMENT** | | | | | | |
| Uses a clear, fair & consistent approach in all dealings with employees | ✓ | | ✓ | | | |
| Relates extremely well to both similar & diverse individuals & groups, understanding the differences and capitalizing on the uniqueness of people to get a job done | ✓ | | ✓ | | | |
| Deals constructively with conflict between individuals & teams | ✓ | | ✓ | | | |
| Develops successful working relationships based on mutual trust & respect, confidentiality & commitment to achieving Organizational Goals | ✓ | | ✓ | | | |
| Takes appropriate action in a timely manner when faced with non-compliant performance issues | ✓ | | ✓ | | | |
| Maintains budgetary confinements within 5% variance | ✓ | | ✓ | | | |
| Hires only to budgeted allotments | ✓ | | ✓ | | | |
| Provides direction, coaching & feedback to employees on an ongoing basis as a part of their Performance Expectations Program responsibilities | ✓ | | ✓ | | | |
| Conducts high-quality Performance Reviews within designated time frames | ✓ | | ✓ | | | |
| **JOB SPECIFIC COMPETENCIES** | | | | | | |
| Demonstrates the knowledge & skills necessary to provide care & services appropriate to any age related need to the patients or residents served on the assigned unit, where applicable | ✓ | | ✓ | | | |
| Demonstrates knowledge, skill & ability in reviewing and approving time schedules for the entire Nursing staff and assures they are returned to the units in a timely manner. | ✓ | | ✓ | | | |
| Demonstrates knowledge, skill & ability when assigning qualified staff to provide coverage for central scheduling demands. | ✓ | | ✓ | | | |
| Maintains accurate records of number of sick calls, lateness, overtime shifts and submit monthly reports. | ✓ | | ✓ | | | |
| Demonstrates knowledge, skill & ability in properly processing employees who request or return from leave of absence and when responding to requests for changes in scheduling. | ✓ | | ✓ | | | |
| Properly prepares sick call authorization slips and follows appropriate procedure. | ✓ | | ✓ | | | |
| Demonstrates knowledge, skill & ability to prepare time schedules for float personnel, part-time and per-diem nurses. Ability to stay current with staffing trends. | ✓ | | ✓ | | | |

D = SKILLS DEMONSTRATION     O = PERFORMANCE OBSERVATION     W = WRITTEN TEST     V = VERBAL TEST

4

## POSITION DESCRIPTION
## PERFORMANCE EVALUATION & IMPROVEMENT PLAN

**Positio.ı Title:  Staffing/Payroll Manager**                    **Job Code:**

| PERFORMANCE CRITERIA | MEETS STANDARD | NEEDS REMEDIATION | METHOD OF EVALUATION | | | |
|---|---|---|---|---|---|---|
| **JOB SPECIFIC COMPETENCIES   (Cont'd)** | | | | | | |
| Demonstrates knowledge, skill & ability in evaluating and scheduling vacation requests for all personnel. Ability to follow up and review "incident items." | ✓ | | ✓ | | | |
| Maintains accurate records of holidays scheduled for float, part-time and per-diem personnel.  Ensures that timecards are recorded in a timely manner. | ✓ | | ✓ | | | |
| Demonstrates knowledge, skill and ability when acting as a back up for Assistant Director of Staffing over Staffing personnel. | ✓ | | ✓ | | | |

D = SKILLS DEMONSTRATION      O = PERFORMANCE OBSERVATION      W = WRITTEN TEST      V = VERBAL TEST

5

**POSITION DESCRIPTION**
**PERFORMANCE EVALUATION & IMPROVEMENT PLAN**

Position Title: Staffing/Payroll Manager                          JobCode

**COMPETENCY VALIDATION AND PERFORMANCE EVALUATION**

Name: _Jillian John_                    UNIT: _Adm_

If the individual's performance of any job specific competency is deemed to need remediation, in order for employee to continue in this position, a plan of professional development with corrective action for improvement is required within 90 days. Immediate reassignment may be indicated based on specific circumstances.

REMEDIATION ACTION PLAN: (INCLUDE GOALS, MEASURABLE CRITERIA, AND TARGET DATE)

**"I have received and read the above evaluation and remediation plan, if indicated."**

EMPLOYEE SIGNATURE: X _Jillian John_   DATE REVIEWED  _8/4/08_

<u>COMMENTS (if any) :</u>
Attach a seperate page if necessary.

NAME/TITLE OF EVALUATORS (S): _GEMMA MOOREAU DNS_

SIGNATURE : _Gmoreau_   DATE : _8/4/08_

SIGNATURE : _____   DATE : _____

<u>COMMENTS (if any) :</u>
Attach a seperate page if necessary.

_Ms. Jillian John is an excellent worker, She has shown that she is able to manage other employees and has a genuine love for her work. She is definetely an asset to the nursing department. GM._

D = SKILLS DEMONSTRATION     O = PERFORMANCE OBSERVATION     W = WRITTEN TEST     V = VERBAL TEST

**KINGSBROOK**

**New Employee Initial Competency**
(Non-nursing)

Position Title: **Staffing/Payroll Manager**                    Job Code:

Employee Name: Jillian John

Title: Staffing Manager                    Date: 8/4/08

You must be supervised until you are determined to be competent to perform your job function without direct supervision.  In any event, a supervisor must complete this form within (30) days of your initial hire date.  Any employee who has not have a completed competency within the above referenced (30) days will be removed from active status from Human Resources.

Method of Evaluation:  [D] = Skills Demonstration          [O] = Performance Observation
                       [W] = Written Test                 [V] = Verbal Test

| PERFORMANCE CRITERIA | MEETS STANDARD | REMEDIATION INSTITUTED | METHOD OF EVALUATION | | | |
|---|---|---|---|---|---|---|
| **JOB SPECIFIC COMPETENCIES** | | | | | | |
| Demonstrates the knowledge & skills necessary to provide care & services appropriate to any age related need to the patients or residents served on the assigned unit, where applicable | ✓ | | ✓ | | | |
| Demonstrates knowledge, skill & ability in reviewing and approving time schedules for the entire Nursing staff and assures they are returned to the units in a timely manner. | ✓ | | ✓ | | | |
| Demonstrates knowledge, skill & ability when assigning qualified staff to provide coverage for central scheduling demands. | ✓ | | ✓ | | | |
| Maintains accurate records of number of sick calls, lateness, overtime shifts and submits monthly reports. | ✓ | | ✓ | | | |
| Demonstrates knowledge, skill & ability in properly processing employees who request or return from leave of absence and when responding to requests for changes in scheduling. | ✓ | | ✓ | | | |
| Properly prepares sick call authorization slips and follows appropriate procedure. | ✓ | | ✓ | | | |
| Demonstrates knowledge, skill & ability to prepare time schedules for float personnel, part-time and per-diem nurses. Ability to stay current with staffing trends. | ✓ | | ✓ | | | |
| Demonstrates knowledge, skill & ability in evaluating and scheduling vacation requests for all personnel. Ability to follow up and review "incident items." | ✓ | | ✓ | | | |
| Maintains accurate records of holidays scheduled for float, part-time and per-diem personnel.  Ensures that timecards are recorded in a timely manner. | ✓ | | ✓ | | | |
| Demonstrates knowledge, skill and ability when acting as a back up for Assistant Director of Staffing over Staffing personnel. | ✓ | | ✓ | | | |

-NEXT PAGE-



**New Employee Initial Competency**
**(Non-nursing)**

Position Title: **Staffing/Payroll Manager**                    **Job Code:**

| PERFORMANCE CRITERIA | MEETS STANDARD | NEEDS REMEDIATION | METHOD OF EVALUATION |
|---|---|---|---|
| JOB SPECIFIC COMPETENCIES   (Con'd) | | | |

*Employee*
~~SUPERVISOR SIGNATURE:~~ _____

SUPERVISOR SIGNATURE: _____

PRINT NAME: GEMMA MOORE RN DNS

COMPLETION DATE: 8/4/08

# Exhibit "C"

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
-----------------------------------------------------------------X
JILLIAN JOHN,                        :

                      Complainant,    :

       -against-             :       **AFFIDAVIT OF**
                                   :       **JILLIAN JOHN**
KINGSBROOK JEWISH MEDICAL    :
CENTER                          :       520-2009-04093
                                   :

                    Respondent.    :
-----------------------------------------------------------------X

STATE OF NEW YORK    )     ss:
COUNTY OF NASSAU    )

    **JILLIAN JOHN, under the penalty of perjury deposes and says:**

1. I am the named Complainant in the above-captioned Charge of Discrimination, currently pending before the Equal Employment Opportunity Commission.

2. I have personal knowledge of the matters contained in this affidavit, and, if called upon, I could and would testify to each of the statements made herein.

3. I am submitting this Affidavit in connection with the above Charge of Discrimination ("Charge") against Respondent, KJMC to address KJMC's mischaracterizations of facts.

4. I have thoroughly reviewed all of the information contained in the above Charge and believe it to be accurate.

5. I have also thoroughly read the position statement submitted by the KJMC, as well as all of the documentary evidence attached by the KJMC to its position statement.

6. After reviewing the KJMC's position statement and those documents, I know that KJMC has misrepresented my job duties. As a Staffing Manager, I would distribute overtime equally to the employees who requested overtime and were available and willing to work, after the overtime shifts had been approved by the Director of Nursing (DNS), Gemma Moore or the Associate Director of Nursing (ADNS), Kathleen John.

7.  At KJMC, all overtime shifts had to be approved by the DNS or ADNS.

8.  As Staff Manager, my duties required that I input payroll data within the Ansos computer program, which works alongside the Kronos program.  Whenever I needed access to the Kronos program, I was required to ask Ms. Christine Kay, Director of Long-Term Care Resources for assistance or a non-managerial employee, who held a lesser title than me.

9.  The Kronos program is integral to ensure that employees are paid properly and I needed access to this program daily during my tenure as Staffing Manager.

10. A susu, is a traditional savings account, which is common in the Caribbean.  The participants receive their original compensation that they put in the susu, at a later date.

11. Specifically, several people will come together to form a susu, which may span over a few weeks, and everyone must put the agreed amount into the savings.  A susu collector does not charge interest or receive an tips, and ensures that everyone receives their personal savings, in its entirety, at an agreed upon date.

12. There is no number requirement for the amount of participants in a susu, and it is not an illicit scheme. Participants in the susu do not suffer any pecuniary lost or receive a financial gain by participating.

Dated:  March 22, 2011
        Carle Place, NY

_____
                                            JILLIAN JOHN

_____
Notary Public

Sworn to and subscribed before me this 22nd day of March 2011.

Stephanos Zannikos
Notary Public, State of New York
ID #: 02ZA6197469
Qualified in Nassau County
My Commission Expires:12/01/2012

# Exhibit "D"

**JILLIAN JOHN**

552 Parkside Avenue Apt B4, Brooklyn NY 11226.  Phone (347) 627-9569; (718) 496-1614

**Objectives:**    To obtain a position in an organization that is dedicated to the promotion of growth of its employees and where my work experiences and abilities will be utilized.

**Experience:**

4/2008 – 9/2009

Kingsbrook Jewish Medical Center, Rutland Nursing Home, Brooklyn, NY
*Staffing Manager*
- Orient new employee into staffing clerk position
- Supervise staffing clerk
- Ensure there is adequate nursing staff on duty on all shifts on a daily basis
- Ensure that all working schedules of the nursing department are completed on time for posting
- Data entry of all schedules into the computer
- Monitoring of employees time and attendance
- Responsible for tracking overtime, replacement of sick calls
- Assign nurses to units based on the acuity of the residents

10/2002 – 4/2008

Kingsbrook Jewish Medical Center, Rutland Nursing Home, Brooklyn, NY
*Staffing Clerk*
- Ensured that all the data entry for the eveng shift were entered into the computer
- Replaced sick calls for the upcoming shifts
- Reviewed the daily staffing sheets for the evening shift to ensure that there were adequate staff on each unit

3/25/1996 - 10/2002

Kingsbrook Jewish Medical Center, Rutland Nursing Home, Brooklyn, NY
*Certified Nursing Assistant*
- Responsible for rendering total care to the residents such as baths, transferring, toileting
- Encouraged and assisted the residents to complete their meals
- Took temperature, pulse respiration and reported to the charge nurse
- Reported any changes in the residents condition to the charge nurse

**Education:**

CNA Certification
GED

References available upon request

Exhibit "E"

# KINGSBROOK JEWISH MEDICAL CENTER
# RUTLAND NURSING HOME

## MEMORANDUM

**TO:**        **ALL NURSING STAFF**

**FROM:**      **GEMMA MOORE, RN DNS**

**SUBJECT:**   **APPROVAL OF OVERTIME**

**DATE:**      **April 4, 2006**

EFFECTIVE IMMIDIATELY, ALL OVERTIME MUST BE APPROVED BY MYSELF, MR BEESHAM OR MS. KATHLEEN JOHN. **WITHOUT EXCEPTION,** PRIOR TO SCHEDULING **ANY OVERTIME,** THE SUPERVISOR REQUESTING OVERTIME MUST CONTACT THE ADMINISTRATIVE STAFF LISTED ABOVE IN THE ORDER IN WHICH THEY APPEAR. **COMPLIANCE WITH THIS <u>DIRECTIVE</u> IS MANDATORY.**

CC.    Bharat Beesham, Assoc. DNS
       Kathleen John, ADN
       Mary Ann Rose, VP LTC
       Michelle Edwards, Assoc. Adm

## KINGSBROOK JEWISH MEDICAL CENTER
## RUTLAND NURSING HOME

## MEMORANDUM

TO:             **Clinical Nurse Managers/Supervisors**

FROM:        **Gemma Moore RN, DNS**

SUBJECT:   **Scheduling of overtime**

DATE:         **January 28, 2009**

---

Please be informed that effective immediately, all overtime and ATM staff being called in to work added shifts must be approve by the DNS or ADNS.  I have instructed the Staffing Manager and Staffing Clerk that any staff member not approved to work extra time by the DNS or the ADNS is to be sent back home.
Any CNM or Supervisor not adhering to this directive will be dealt with.


Thank you.


C.c          Mary Anne Rose, VP LTC
             Kathleen John, Assoc. DNS
             Jillian John, Staffing Manager
             Pierre-Andre Edouard, Staffing Clerk

### KINGSBROOK JEWISH MEDICAL
### RUTLAND NURSING HOME

### MEMORANDUM

**TO:**      **Ms. Coombs, NCC**

**FROM:**    **Gemma Moore, RN DNS**

**DATE:**    **August 7, 2007**

**SUBJECT: Scheduling of overtime**

---

PLEASE DO NOT SCHEDULE MS. MARIE PIZARRO AND MS. LORNA
WILLIAMS TO WORK ANY MORE OVERTIME UNTIL FURTHER NOTICE.
THESE EMPLOYEES HAVE WORKED OVER 46 OVERTIME SHIFTS ALREADY
FOR THE YEAR.  THERE ARE OTHER EMPLOYEES WHO CAN BE USED FOR
OVERTIME IF THE NEED ARISES.  PLEASE NOT THAT THIS SITUATION WILL
BE MONITORED.

PS.  THIS MEMO IS FOR YOU AND NOT TO BE SHARED WITH ANYONE ELSE.

THANK YOU.

CC.      V. BRYANT, STAFFING COORDINATOR
         J. JOHN, STAFFING CLERK

Exhibit "F"

## John, Jillian

| | |
|---|---|
| **From:** | John, Jillian |
| **Sent:** | Monday, August 03, 2009 8:34 AM |
| **To:** | Mckeon, John |
| **Cc:** | Molloy, Kevin; Brady, Dr. Linda; Mohammed-Oliver, Stacey; Rose, Mary Anne; Moore, Gemma; John, Kathleen |
| **Subject:** | Unfair treatment |

Dear Mr McKeon,

I was informed by Ms Gemma Moore, DNS that during a conversation with you on Friday July 31, regarding allegations regarding my integrity with regards to my employment at KJMC. You informed her that because of these allegations you will prefer not to terminate me, but would rather accept my letter of resignation.

This morning Monday August 3rd, I showed up for duty as scheduled, and Mr Richards, the newly hired part time Staffing Associate who works on the evening tour was also present at work under the directive of Ms Christine Kay, to replace me for the rest of the week. I did not called out sick, nor did I inform anyone that I would not be at work.

I have no idea why Ms Kay is even involved in this issue, because even if I was not going to be at work, I believe that that Ms Kathleen John, Assoc.DNS should have been the one to arrange replacement in the absence of Ms Gemma Moore, DNS. As a matter of fact in the past whenever Ms Valerie Bryant my predecessor was going to be absent from work, she would always call me to come in. Similarly since Mr Richards's employment I have been the one calling him to come in whenever I am not going to be at work. It appear as though a decision was made to terminate me without even a discussion with me regarding the allegations.

At this point, I am letting you know that I have no intention of resigning my position because I have done nothing wrong.

Respectfully.


Jillian John
Staffing Manager
Rutland Nursing Home
585 Schenectady Avenue
Brooklyn, NY 11203
PH# (718) 363-6522
jjohn@kingsbrook.org
*"Change your thoughts and you can change the world"*

*EXHIBIT—8*

The information in this electronic mail message is privileged and confidential, and intended for the addressee only. It is protected by federal and state law which prohibits you from making any further disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law. If you are not the intended recipient, the disclosure, copying distribution or use of the contents of this electronic message (including any attachment) is prohibited: If you have received this electronic message in error, please notify the sender immediately and destroy the

Exhibit "G"

*Notice of / Attention to M's Son / SCREEN*

*Betie Said that is Security / What they want you to Have? As Per Christine Kaj / Employee Had Pass word.*

*Access To View*

**John, Jillian**

*Employee ask for Excuse To / Leave.*

**From:** John, Jillian
**Sent:** Monday, November 05, 2007 5:39 PM
**To:** Liggins, Earnest
**Cc:** Perez, Lytton
**Subject:** kronos

Dear Mr. Liggins,
I just need to get a few things clarified.

On Friday November 2, 2007, I was requested by you to attend a kronos training session. During the training I observe that everyone else was able to do active work on their computer, while I had the ability to view. This continued for about half an hour into the session. I felt as though I was in the wrong place and a few questions arose in my mind.

1. If my job title is the same as the other employees that were in the training, why then was I selected for exclusion from the entire training?
2. Why would a part time employee be granted the full training session and I as a full time employee be granted view access only?
3. I would like to know what my role would be with this new access requirement.

This act of segregation made me feel very humiliated degraded and even discriminated against, because,
even if I was only allowed to have "view access" only, then I should have been sent to a different training
session. I would greatly appreciate if you can look into this matter for me please.

Thank you.
Respectfully.
Jillian John.

EXT 6522
jjohn@kingsbrook.org
*"Change your thoughts and you change the world"*

*Received on 11/6/07*

EXHIBIT—1

# Exhibit "H"



Table of Organization
Rutland Nursing Home

# Exhibit "I"

Case 1:11-cv-03624-MKB-JO   Document 1   Filed 07/26/11   Page 100 of 102 PageID #: 100

**From:** jillyj1@optonline.net
**To:** g5375@aol.com
**Subject:** (no subject)
**Date:** Thu, Oct 2, 2008 9:18 pm
**Attachments:** Letter_to_Mr._McKeon_(Draft).doc (30K)

This was very hard to do from this very silly web site.

Jillian John
552 Parkside Avenue, Apt B4
Brooklyn, NY 11226


October 2, 2008

Mr. John McKeon, VP Human Resources
Kingsbrook Jewish Medical Center
585 Schenectady Avenue
Brooklyn, NY 11203

Dear Mr. McKeon,

It is with the utmost reluctance that I formulate this letter to you, but after much consideration and reconsideration, I have decided that it is only prudent to bring you up to date with what I have been experiencing since Friday November 2, 2007 after I did question a decision that was made not to give me full access to Kronos. I know that in doing so Title VII of the civil rights act of 1991 was violated which states that: "Management must not limit, segregate or classify applicants or employees in anyway that would deprive or tend to deprive an individual of employment opportunities or adversely affects his status because of race, color, religion, sex, or national origin. This includes wage increases, benefits, and **other job practices**". I feel that I was discriminated against because I am disliked by Ms. Kay who made the decision not to give me full access to Kronos, when others with the same job description and at that time held the same position title as me were given full access to kronos.

1. Even before Ms. Bryant's retirement, I have always made myself available to fill in whenever she was off. After she retired, I was very disappointed and hurt to see that the educational requirement to apply for the staffing managers position was upgraded to a bachelors degree even though the job description and/or classification was not changed in any way. I found this very strange, since my predecessor did not hold an associate's nor a bachelor's degree and I had made it very clear to all in the administrative suite that I was interested in applying for the position when Ms. Bryant retired; but I did know that some members of the administrative staff was not in agreement to hire me as the staffing manager.

2. At the ending of every pay period, an accuracy report is being generated by Ms. Kay, enumerating all the errors that occurred due to staffing data entry. This has never been done before when Ms. Bryant was the staffing manager. I do not understand the rationale for this, but I think that this is an attempt to keep a paper trail on me so that it could eventually lead to my termination. Just to inform you though, that there could be an average of ten (10) errors in a payroll of over 400 employees, which I think is phenomenal.

3.      As a manager I am aware that I would have to do what is necessary to get the job done, even if it means working extra hours without compensation. I willing do this, but there are times when I would need to be compensated for my time. I bring to your attention an incident which occurred on Friday September 19, 2008. Ms. Kay called me and told me that she will be giving me time back on Thursday September 18th for extra time worked on Monday September 15, 2008 and she does not know what I will do for Wednesday September 17th, that I was on my own because I can only get time back within the same pay period which was ending that Saturday September 20th. Ms. Kay was very condescending in the manner in which she spoke to me. It is everyone's opinion that I should act the part of a manager which means giving extra time to the facility, but Ms. Kay, who holds the title of "Director" is allowed to take time back every time she works the Sunday before the payroll, even though she leaves the facility every day at or before 4 PM. I think that two different standards are being used to determine how a manager and a "director" should act. Ms. Moore has requested that I be paid for Wednesday September 17, and Saturday September 20th and was not even given the courtesy of a response from the VP of LTC. I think that this was a mean and calculated act on her part and just goes to show her dislike for me. I just need to let you know that due to the magnitude of work that the staffing desk entails, it is counter productive for me to have time back anyway, because when I return, I have double the amount of work to be completed. I feel that I should be given the opportunity as the other managers, supervisors, and administrative coordinator, the opportunity to be compensated through ATM agency, because there are times that I will work over up to 14 to 21 hours per week in an effort to ensure that the payroll is on time, and would not be able to get time back within the same week or pay period.

4.      The administrative suite at Rutland Nursing Home used to be a very nice place to come to work. Everyone use to get along well until the transfer of Ms. Kay to the payroll position. Now the atmosphere in the office is tense and not conducive to the development of cohesive relationships. She is very controlling and seems to feel that she is now in charge of everyone; and the sad thing is, nothing can be said about it because I feel that nothing will be done about it any how and I will only be subjected to victimization. I have to be constantly asking information of Ms. Kay in order to complete my daily tasks due to the fact that she does not want me to have access to kronos. This is very frustrating and impedes my ability to complete my work in a timely manner.

I am requesting that you intervene and do something to remedy the situation quickly please. Thanking you for your quick response. Thank you.

Jillian John,

Staffing Manager